## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In Re DVI, Inc., Securities Litigation | 2:03-CV-05336-LDD |
| ) ) ) | Hon. Legrome D. Davis, presiding |

## MOVING DEFENDANTS' MOTION FOR CERTIFICATION FOR APPEAL PURSUANT TO 28 U.S.C. §1292(b)

Pursuant to 28 U.S.C. §1292(b), Defendants PresGar Imaging, LC, Dolphin Medical Inc., Richard Miller and Terry Cady (collectively, the "Moving Defendants") hereby move that the Court certify for immediate appeal pursuant to 28 U.S.C. § 1292(b) the following two legal questions which are addressed in the Court's ruling in its Memorandum and Order entered May 31, 2005:

> (1) Can a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a) and (c) thereunder be properly premised on conduct that does not involve "market manipulation" as defined by the Supreme Court in *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977)?

> (2) Does *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), preclude claims for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a) and (c) thereunder, and, if so, what level of conduct constitutes a primary violation of Rule 10b-5(a) and (c)?

For the reasons set forth in the accompanying Memorandum of Law, which is incorporated by reference herein, these questions are appropriate for certification for immediate appeal pursuant to 28 U.S.C. §1292(b).

Respectfully submitted,

Dated: June 16, 2005

/s/ Robert L. Hickok

Robert L. Hickok (#30101)
Christopher J. Huber (#90479)
PEPPER HAMILTON LLP
18th and Arch Streets
Philadelphia, PA  19103
Telephone:  215-981-4000

Attorneys for Defendant PresGar Imaging, LC

Dated: June 16, 2005

Patricia M. Hamill, Esq.
Paul J. Greco, Esq.
CONRAD, O'BRIEN, GELLMAN & ROHN, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA  19102-1916
Telephone:  215-864-8068

Attorney for Defendant Richard Miller

Dated: June 16, 2005

Daniel Segal, Esq.
Bruce Haines, Esq.
Matthew Hamermesh, Esq.
Paul W. Kaufman, Esq.
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA  19103-6933
Telephone:  215-568-6200

Attorneys for Defendant Terry W. Cady

Dated: June 16, 2005

Stuart J. Chanen, Esq.
Leah J. Domitrovic, Esq.
Matthew J. Cannon, Esq.
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street
Suite 1600
Chicago, IL  60661-3693
Telephone:  312-902-5200

Jeffrey S. Saltz, Esq.
LAW OFFICES OF JEFFREY S. SALTZ,
P.C.
1515 Market Street, Suite 1000
Philadelphia, PA  19101
Telephone:  215-523-5317

Attorneys for Defendant Dolphin Medical
Inc.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In Re DVI, Inc., Securities Litigation | ) ) ) ) | 2:03-CV-05336-LDD<br><br>Hon. Legrome D. Davis, presiding |

## MEMORANDUM OF LAW IN SUPPORT OF MOVING DEFENDANTS' MOTION FOR CERTIFICATION FOR APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

## I.   INTRODUCTION

In its Memorandum and Order entered on May 31, 2005, this Court ruled that class plaintiffs had stated a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 (a) and (c) promulgated thereunder against PresGar Imaging, LC and Dolphin Medical Inc. (the "Special Relationship Entity (SRE) Defendants") and against Richard Miller and Terry Cady (the "Individual Defendants") (collectively, the "Moving Defendants").

Defendants recognize that this Court has entered a stay in this matter. While 28 U.S.C. § 1292(b), unlike a motion for reconsideration, does not establish a specific time limit within which a request for certification must be made, courts are unwilling to "grant an inexcusably dilatory request." *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957 (7th Cir. 2000). Therefore, in order to preserve their right to request §1292(b) certification, Moving Defendants have filed the Motion with the Court at this time. Absent further order of the Court Moving Defendants do not expect that plaintiffs will be required to respond to this motion, or that the Court will rule on it, until after the stay is lifted.

Moving Defendants filed a similar motion in the related case filed by WM High Yield Fund and related plaintiffs. The rationale for authorizing an interlocutory appeal pursuant

to 28 U.S.C. §1292(b) has increased since that motion was filed.  On application by the U.S. Attorney's Office, this Court has granted a stay of the proceedings in both cases because of an on-going criminal investigation.  Given that both cases involve substantially identical legal issues on which Third Circuit law is "sparse," certification of these decisions will provide the Third Circuit an opportunity to clarify the law during the pendency of the stay.  Needed guidance from the Third Circuit can thus be obtained now without interfering with the litigation of the cases pending before this Court.

The Moving Defendants respectfully submit that the decision of this Court denying their motions to dismiss Plaintiff's Rule 10b-5 (a) and (c) claim cannot be reconciled with the interpretation of Rule 10b-5(a) and (c) by the Third Circuit and federal courts in other Circuits, all of which require specific allegations of market manipulation in order to state such a claim.  Nor is the Court's decision compatible with the decision of the Supreme Court in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), holding that there is no private cause of action for aiding and abetting liability under Section 10(b).

Because the Court's ruling involves controlling questions of law as to which there is substantial ground for difference of opinion and an immediate appeal from the Court's order would materially advance the ultimate termination of the litigation, this Court should certify the following two questions for immediate appeal pursuant to 28 U.S.C. § 1292(b):

> (1) Can a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a) and (c) thereunder be properly premised on conduct that does not involve "market manipulation" as defined by the Supreme Court in *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977)?
>
> (2) Does *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), preclude claims for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5(a) and (c) thereunder, and, if so, what

level of conduct constitutes a primary violation of Rule 10b-5(a)
and (c)?

The Moving Defendants recognize that appeal is normally reserved only for final
decisions of a District Court, but interlocutory appeal is particularly warranted in this case
because, as this Court noted, the law in the Third Circuit interpreting Rule 10b-5(a) and (c) is
"sparse" (Mem. & Order at 18), and guidance from the Third Circuit would make the
adjudication of this and other cases more efficient. In addition, to the extent the decision of this
Court is interpreted as permitting an extremely broad scope of liability under Rule 10b-5(a) and
(c), it may induce other plaintiffs to choose this District as the venue for claims that might be less
favorably received in other jurisdictions. All of the criteria for interlocutory appeal are satisfied
here:  the appeal would involve two controlling questions of law that could be grounds for
reversal; the contrary decisions of other courts provide a substantial ground for a difference of
opinion with this Court's decision; and immediate appeal could lead to a dispositive ruling on
plaintiffs' claims, thereby bringing about the ultimate termination of the litigation as to the
Moving Defendants.

## II.    THE COURT'S RULING AS TO THE MOVING DEFENDANTS

The Court correctly observed in its Memorandum and Order that plaintiffs did not
allege that any of the SRE Defendants or the Individual Defendants made false or misleading
statements or omitted material facts concerning DVI.  In fact, as the Court stated, all of the
Moving Defendants are far attenuated from any misstatements or omissions allegedly made by
DVI.

With respect to the SRE Defendants, the Court held that they "are not alleged to
have made any misstatements or omissions and are too far removed from the statements at issue
to be held liable therefore."  Mem. & Order at 8.  The SRE Defendants are merely independent

businesses that engaged in arm's length business transactions with DVI. There are no allegations that the SRE Defendants participated in the management or affairs of DVI.

With respect to the Individual Defendants, the Court held that "Defendants who have not been alleged to have made any statements, Defendants Turek, Cady, and Miller, cannot be held liable therefor and Plaintiffs' Rule 10b-5(b) claim against them in Count I must be DISMISSED." Mem. & Order at 15.

For these reasons, the Court correctly held that the plaintiffs had not stated a Rule 10b-5(b) claim against the SRE Defendants and the Individual Defendants. Order at 8-18. The Court nonetheless allowed plaintiffs' Section 10(b) claim premised on an alleged violation of Rule 10b-5(a) and (c) to go forward against the Moving Defendants based upon a "fraudulent scheme" theory of liability. Order at 18-19. For the reasons set forth below, Moving Defendants respectfully submit that this ruling was erroneous, that substantial grounds for difference of opinion exist as to the interpretation of Rule 10b-5(a) and (c) in this regard, and that immediate appeal of this ruling would therefore be appropriate under 28 U.S.C. §1292(b).

## III.   LEGAL ARGUMENT

### A.   Standard Applicable to An Application for Certification Under 28 U.S.C. § 1292(b)

Pursuant to 28 U.S.C. § 1292(b), a District Court may use its discretion to certify an interlocutory order for immediate appeal where: (1) such order involves a controlling question of law; (2) there is substantial ground for difference of opinion with respect to that question; and (3) immediate appeal may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b).

For the purposes of section 1292(b), a controlling question of law is any decision which, if erroneous, would be grounds for reversal. *See Katz v. Carte Blanche Corp.*, 496 F.2d

4

747, 755 (3d Cir. 1974). Substantial grounds for difference of opinion exists where there are

conflicting and contradictory opinions of courts which have ruled on the issue. *See Kolbeck v.*

*Gen. Motors*, 702 F. Supp. 532 (E.D. Pa. 1988); *Stecyk v. Bell Helicopter Textron, Inc.*, No. 94-

CV-1818, 1998 U.S. Dist. LEXIS 44, *8 (E.D. Pa. Jan. 5, 1998). Permitting interlocutory appeal

of the critical questions presented by Moving Defendants may well "avoid protracted and

expensive litigation." *Milbert v. Bison Lab., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958); *see also*

*Larsen v. Senate of the Commonwealth of Pa.*, 965 F. Supp. 607 (M.D. Pa. 1997) (certifying

issue under 28 U.S.C. § 1292(b) and explaining that "depending on the outcome, appellate

review in this case could avoid expensive and protracted discovery").

In all, section 1292(b) "is designed to allow for early appeal of a legal ruling

when resolution of the issue may provide more efficient disposition of the litigation." *Ford*

*Motor Credit Co. v. S.E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir. 1981). For the

reasons set forth below, Moving Defendants respectfully submit that the Court's ruling on the

scope of liability under Rule 10b-5(a) and (c) is particularly appropriate for certification under

section 1292(b).

> **B.    Immediate Appeal Is Appropriate to Determine Whether Rule 10b-5(a) and
> (c) Liability Can Be Found Based On Conduct That Does Not Involve
> "Market Manipulation" As Defined By the Supreme Court in *Santa Fe*
> *Indus., Inc. v. Green*, 430 U.S. 462 (1977)**

In *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977), the Supreme Court

explained that, regardless of the language in particular subdivisions of Rule 10b-5, the rule may

not be interpreted as imposing liability for conduct not expressly prohibited by Section 10(b) of

the Exchange Act. *Id.* at 472-73 ("The scope of the Rule cannot exceed the power granted to the

Commission by Congress under § 10(b)."). Consequently, focusing on the language of Section

10(b) of the Exchange Act, the Supreme Court held that Section 10(b) and Rule 10b-5 are

violated only where "the conduct alleged can be fairly viewed as 'manipulative or deceptive'" within the meaning of the statute. *Id.* at 474, 476-77.[1]

The first of these two concepts, "manipulation," is a term of art applicable only to certain practices that were not at issue in *Santa Fe* or the present case. *Id.* at 476 ("manipulation" is "virtually a term of art" referring "generally to practices, such as wash sales, matches orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity"). Absent manipulation, the Court held, the plaintiffs must allege some form of "deception," which necessarily means a misrepresentation or omission. *Id.* at 476 & n.15.[2]

Courts in this Circuit recognize that under *Santa Fe,* aside from misstatement or omission liability, Section 10(b) claims must be based on manipulation. *See GFL Advantage Fund, Ltd. v. Colkitt,* 272 F.3d 189, 207 (3d Cir. 2001). In *Colkitt,* the Third Circuit held that Section 10(b) of the Exchange Act and Rule 10b-5 create liability for two types of securities fraud: (1) false or misleading statements or omissions of material facts; and (2) deceptive or manipulative acts that affect the trading of securities on the secondary market. *See id.*

This Court properly concluded that, in light of the holding in *Central Bank,* that no private right of action for aiding and abetting exists under Rule 10b-5, there is no basis to bring a "misrepresentation or omission" Rule 10b-5(b) claim against defendants that are not alleged to have ever made any statements whatsoever about DVI or the securities it issued.

---

[1] Section 10(b), 15 U.S.C. § 78j(b), provides that it is unlawful for any person:

"[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."

[2] The Supreme Court reaffirmed this view in *Central Bank,* 511 U.S. at 177 ("As in earlier cases considering conduct prohibited by § 10(b), we again conclude that the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act").

Mem. & Order at 15-16.  Nonetheless, the Court declined to dismiss the Section 10(b) claim against the Moving Defendants on the basis that plaintiffs had adequately pleaded their participation in a "fraudulent scheme" and that the Moving Defendants therefore could be held liable pursuant to Rule 10b-5(a) and (c).  Mem. & Order at 19.

In so holding, this Court recognized the viability of a claim pursuant to Rule 10b-5(a) and (c) notwithstanding the absence in this case of any allegations of "market manipulation" as defined by the Supreme Court.  As detailed below, Moving Defendants respectfully submit that the Court committed an error of law in so ruling, and that substantial grounds for difference of opinion exist on this issue.

The Courts in this Circuit have interpreted liability under Rule 10b-5(a) and (c) – what the plaintiffs call "fraudulent scheme" liability – to be synonymous with "market manipulation."  *See Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 626 (D.N.J. 2003) ("there are two types of claims available under Section 10b-5:  misrepresentation or omission of material facts, and market manipulation") (citations omitted); *In re Safeguard Scientifics*, No. Civ. A. 01-3208, 2004 WL 2700291, * 2 (E.D.Pa. Nov. 18, 2004).  And, as mentioned above, the Supreme Court defines "manipulation" as "practices, such as wash sales, matches orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity."  *Santa Fe*, at 476.

In a November 2004 opinion, the District Court for the Eastern District of Pennsylvania stated:

> [w]here the plaintiff's §10(b) claim is grounded in the defendant's use of a manipulative or deceptive device, the plaintiff must, rather than identifying a material misrepresentation or omission, show "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities."  A plaintiff may establish such conduct by showing that the defendant either injected inaccurate information into the market or created a "false impression of market activity."

However, to maintain a private right of action for market manipulation, a plaintiff must still prove the basic elements of scienter, reliance, and causation of damages, typically reflected in stock price movements.

*Safeguard Scientifics*, 2004 WL 2700291, at * 2 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199; *Colkitt*, 272 F.3d at 205; *In re Bell Atl. Corp. Sec. Litig.*, Civ. A. Nos. 91-0514, 91-0673, 93-999, 91-0518, 91-0737, 91-0531, 91-7048, 1997 WL 205709 (E.D.Pa. April 17, 1997)).

The leading case in the Third Circuit setting forth the pleading requirements for a market manipulation claim is *Jones v. Intelli-Check*, 274 F. Supp 2d 615. Reading the holding in *Colkitt*[3] in conjunction with the well-established law on pleading a section 10(b)/Rule 10b-5 claim, the court in *Jones v. Intelli-Check* held that to state a claim for market manipulation, a plaintiff must plead that: (1) in connection with the purchase or sale of securities; (2) defendant engaged in deceptive or manipulative conduct by injecting inaccurate information into the marketplace or creating a false impression of supply and demand for the security; (3) for the purpose of artificially depressing or inflating the price of the security; (4) that plaintiff reasonably relied on the artificial stock price; (5) that plaintiff's reliance proximately caused plaintiff's damages; and (6) that defendant acted with scienter. *Jones v. Intelli-Check*, 274 F. Supp. 2d at 627-28. The elements of reliance, causation of damages, and scienter are common to all section 10(b)/Rule 10b-5 claims. *Id.* at 628 (citing *Semerenko v. Cendant Corp.*, 223 F.3d 165, 174 (3d Cir. 2000)).

---

[3] The issue of market manipulation arose in <u>Colkitt</u> in the context of an affirmative defense under section 29(b) of the Exchange Act, which provides that a contract made or performed in violation of any other section of the Exchange Act or in violation of any rule or regulation promulgated thereunder is void. *Colkitt*, at 199. As an affirmative defense to a breach of contract claim, Colkitt argued that because plaintiff had violated section 10(b) and Rule 10b-5 by engaging in market manipulation, the contract at issue was void. *Id.* The Third Circuit held that in order for an affirmative defense of market manipulation to survive summary judgment, a party must prove that in connection with the purchase or sale of securities, defendant engaged in deceptive or manipulative conduct by injecting inaccurate information into the marketplace or creating a false impression of supply and demand for the security for the purpose of artificially depressing or inflating the price of the security. *Id.* at 207.

Here, plaintiffs sought to avoid the law in this Circuit by narrowly defining "deceptive scheme/market manipulation" claims under Rule 10b-5(a) and (c) by citing to a single Southern District of New York case, *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004). Relying on the *Global Crossing* case – even in the face of the recent case law from this District setting forth the elements of this type of claim – plaintiffs argued that to state a claim under Rule 10b-5(a) and (c), plaintiffs must allege only four elements: (1) that each defendant committed a manipulative or deceptive act; (2) in furtherance of the alleged scheme to defraud; (3) with scienter; and (4) reliance by Plaintiffs. *Id.*

In its Memorandum and Order, this Court cited both the *Jones v. Intelli-Check* decision and the *Global Crossing* decision without reconciling what Moving Defendants respectfully contend are inherently contradictory standards set forth in the two decisions. *Jones v. Intelli-Check* posits a narrow interpretation of Rule 10b-5(a) and (c) liability tied directly to pleading of specific acts of market manipulation such as wash sales and rigged prices. This interpretation is supported by the Supreme Court's decision in *Santa Fe*, which points out that liability under Rule 10b-5 cannot exceed the scope of liability established by Section 10(b) of the Exchange Act. *Global Crossing*, on the other hand, appears to posit a much broader scope of liability under Rule 10b-5(a) and (c), allowing any conceivable type of fraud activity not involving a misstatement or omission (covered by Rule 10b-5(b)) to be transformed into a federal securities law claim. The *Global Crossing* interpretation is inherently at odds with the Supreme Court's decision in *Santa Fe*, and as detailed below, *Central Bank*.

It is undisputed that plaintiffs in this case have not alleged specific manipulative conduct (e.g., match sales or rigged prices) as to those Moving Defendants to whom no misstatement or omission has been attributed. Notwithstanding this lack of allegations, this

9

Court ruled that "it appears that [Plaintiffs] have set forth sufficient facts to survive a Motion to Dismiss as to all Defendants on the basis of Rule 10b-5(a)/(c) liability." Mem. & Order at 19. In so ruling, the Court apparently adopted the extremely broad *Global Crossing* standard of liability under Rule 10b-5(a) and (c). Moving Defendants respectfully suggest that this ruling is erroneous and in conflict with the Supreme Court decisions in *Santa Fe*, the Third Circuit decision in *Colkitt*, and the District Court decision in *Jones v. Intelli-Check*. Prompt review of this important legal issue by the Third Circuit would clarify the law applicable to this case, and, if Moving Defendants are correct, would result in dismissal of the Rule 10b-5(a) and (c) claim, and hence the dismissal of the entire action, as to all of the Moving Defendants.

**C.    Immediate Appeal Is Appropriate To Determine Whether Under Rule 10b-5(a) and (c), Certain Conduct In Connection With a Scheme To Defraud Merely Constitutes Aiding and Abetting a Violation of Section 10(b) and, If So, Whether a Claim Based On Such Conduct Is Barred By *Central Bank***

Moving Defendants respectfully submit that this Court's Memorandum and Order and the decision in *Global Crossing* are also markedly at odds with the Supreme Court's holding in *Central Bank*, that no private right of action exists for aiding and abetting liability under Section 10(b). Indeed, if *Global Crossing*'s expansive view of Rule 10b-5(a) and (c) is adopted, the decision in *Central Bank* would be rendered a complete nullity since any defective aiding and abetting claim pursuant to Rule 10b-5(b) could simply be salvaged by recasting it as a "scheme to defraud" claim under Rule 10b-5(a) and/or (c). *See, e.g., In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 505 (W.D. Pa. 2002) (when allegations allegedly giving rise to a violation of Rule 10b-5(a) and (c) are premised on the exact conduct that, if framed as a violation as Rule 10b-5(b), would be barred by *Central Bank* as an impermissible aiding and abetting claim, they fail to state a claim); *In re Homestore.com, Inc. Sec. Litig.*, 252 F. Supp. 2d 1018, 1038 (C.D. Cal.

2003) (holding that *Central Bank* precludes Section 10(b) liability for ordinary business partners and third parties doing business with the primary violator).

Accordingly, even assuming *arguendo* that conduct other than traditional acts of market manipulation may be actionable under Rule 10b-5(a) and (c), *Central Bank* would still require that a distinction be made between primary participants in the "scheme to defraud" and those accused of merely aiding and abetting the alleged scheme. As the *Homestore* court concluded, even in the context of an alleged Rule 10b-5(a) and (c) "scheme to defraud," plaintiffs "may have differing degrees of culpability depending on their role in the scheme;" and that "[i]n light of *Central Bank*, only those participants who are 'primary violators' of Section 10(b) may be held liable in a private action for securities fraud." *Id.* at 1040.

The Moving Defendants respectfully submit that if, as we contend and the *Homestore* court concluded, *Central Bank* requires that a line be drawn under Rule 10b-5(a) and (c) between primary violators and aiders and abettors, the alleged conduct of the Moving Defendants, and, in particular, that of the SRE Defendants, would clearly fall on the aiding and abetting side of the line, and dismissal would be required under all three subsections of Rule 10b-5.

In a holding that Defendants respectfully contend should be equally applicable here, the *Homestore* court stated:

> Plaintiff's theory of liability as to the outside defendants is creative and plausible, yet it must fail for three reasons. First, the parties have not cited, and **the Court is unaware of, any post-*Central Bank* case that has ever held that a simple business partner to a corporation is liable to the shareholders of that corporation for securities fraud. The Court declines the invitation to be the first**. Second, no matter how a "scheme" is defined, *Central Bank* dictates that only those participants who commit "primary violations" of the securities laws may be held liable; those who merely facilitate or participate cannot. Third, in this case, the shareholders of Homestore were damaged by their reliance on statements and material omissions made by Homestore, not the "scheme" itself.

11

Plaintiff's "scheme to make an omission" theory is simply too attenuated to hold outside business partners liable under Section 10(b).

*Homestore*, 252 F. Supp. 2d at 1037-38.

It appears that, as a result of its recognition of a basis for a claim against the SRE Defendants under Rule 10b-5(a) and (c), this Court accepted the "invitation" previously declined by the court in *Homestore* and became the first in the nation to hold that a primary claim under Section 10(b) can adequately be asserted against a mere business partner (the SRE Defendants are even more remote than business partners) of the company that issued the allegedly false financial statements. In so holding, Moving Defendants believe the Court misapplied the law. Given the current state of the law, however, at a minimum, there is "substantial ground for difference of opinion" with respect to the law in this regard, and certification pursuant to Section 1292(b) would therefore be appropriate.

Notably, plaintiffs in *Homestore* have appealed the District Court's decision dismissing Section 10(b) claims against the business partner defendants to the Court of Appeals for the Ninth Circuit and that appeal will apparently be heard in the very near future. *See CA State Teachers Re v. Homestore.Com, Inc.*, Ninth Circuit Docket No. 04-55665, 4/4/05 entry (annexed as Exhibit A hereto) (directing that case be scheduled for hearing on next available calendar). If the Ninth Circuit affirms the decision of the trial court in *Homestore*, this Court would be in the unenviable position of having expanded the federal securities laws beyond even what the Ninth Circuit believes to be its limitations. By certifying this issue and enabling the Third Circuit to decide the questions promptly, such a situation would be ameliorated.

Finally, the appeal to the Ninth Circuit in *Homestore* is important in yet another respect. In connection with such appeal, the SEC filed a brief as *amicus curiae* (Brief of the Securities and Exchange Commission, *Amicus Curiae*, In Support Of Positions That Favor

Appellant, dated October 2004, in *Simpson v. Homestore.com, Inc.*, No. 04-55665 (9th Cir.) ("SEC Brief")), a copy of which is annexed hereto as Exhibit B.  Although the SEC Brief argues for an expansive interpretation of Section 10(b) and contends, *inter alia*, that liability can be imposed on any defendant "for engaging in a scheme to defraud, so long as he himself, directly or indirectly, engages in a manipulative or deceptive act as part of the scheme" (SEC Brief at 16), even the Commission does not contend, as this Court seems to have concluded, that *Central Bank* is inapplicable to claims pursuant to Rule 10b-5(a) and (c).[4]

Indeed, in its *amicus* brief, the SEC explicitly recognized that *Central Bank*'s prohibition on the assertion of aiding and abetting claims does apply to Rule 10b-5(a) and (c) claims and precludes claims against "any person who provides assistance to other participants in a scheme **but does not himself engage in a manipulative or deceptive act** [since that defendant] **can only be an aider and abettor**."  SEC Brief at 16 (emphasis added).

In explaining why a line must be drawn, the Commission stated: "It is essential that the test for primary liability provide a meaningful distinction between a primary violator and an aider and abettor; **otherwise, there is a risk that primary liability would be extended to cover activity that should properly be viewed as only aiding and abetting**."  SEC Brief at 17 (emphasis added).  We respectfully submit that this Court's failure to make any determination as to whether the allegations as to each Moving Defendant constitute a primary violation of Rule 10b-5(a) and (c), or merely aiding and abetting another's primary violation, resulted in the very outcome as to which the SEC expressed concern -- the improper extension of primary liability to mere aiders and abettors.  *See also Rent-Way*, 209 F. Supp. 2d at 505.

---

[4] It is well settled that the SEC's interpretation of Section 10(b) is entitled to deference if it is reasonable. *Levine v. SEC*, No. 04-1049, 2005 U.S. App. LEXIS 8129 (3d Cir. May 10, 2005).

**D.     Certification Would Materially Advance the Termination of the Litigation**

There can be no doubt that certification of the questions presented by the Moving Defendants would materially advance the ultimate termination of this litigation since, if the questions are resolved in the Moving Defendants' favor, dismissal of the Rule 10b-5(a) and (c) claim against them would be required. *Milbert v. Bison Lab., Inc.*, 260 F.2d at 433; *see also Larsen v. Senate of the Commonwealth of Pa.*, 965 F. Supp. 607 (M.D. Pa. 1997) (certifying issue under 28 U.S.C. § 1292(b) and explaining that "depending on the outcome, appellate review in this case could avoid expensive and protracted discovery"). For most of the Moving Defendants, this would mean that they would be dismissed from the case entirely.

Furthermore, it is important that the Third Circuit answer these questions, not only because the answer will assist in the resolution of this case, but also because it will, by clarifying when a District Court may properly recognize a primary claim under Section 10(b), greatly promote judicial economy and provide much-needed guidance to the District Courts. For this reason, as well, the Third Circuit should be given the earliest possible opportunity to decide this important issue.

14

## IV.    CONCLUSION

For the reasons stated above, the Moving Defendants respectfully request that this

Court certify the following two questions for immediate appeal pursuant to 28 U.S.C. § 1292(b):

(1) Can a claim under Section 10(b) of the Securities Exchange
Act of 1934 and Rule 10b-5(a) and (c) thereunder be properly
premised on conduct that does not involve "market manipulation"
as defined by the Supreme Court in *Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977)?

(2) Does *Central Bank of Denver, N.A. v. First Interstate Bank of
Denver, N.A.*, 511 U.S. 164 (1994), preclude claims for aiding and
abetting a violation of Section 10(b) of the Securities Exchange
Act of 1934 and Rule 10b-5(a) and (c) thereunder, and, if so, what
level of conduct constitutes a primary violation of Rule 10b-5(a)
and (c)?

Respectfully submitted,

Dated: June 16, 2005                    /s/ Robert L. Hickok
                                        Robert L. Hickok (#30101)
                                        Christopher J. Huber (#90479)
                                        PEPPER HAMILTON LLP
                                        18th and Arch Streets
                                        Philadelphia, PA  19103
                                        Telephone:  215-981-4000

                                        Attorneys for Defendant PresGar Imaging, LC

Dated: June 16, 2005                    Paul Greco
                                        Patricia M. Hamill, Esq.
                                        Paul J. Greco, Esq.
                                        CONRAD, O'BRIEN, GELLMAN &
                                        ROHN, P.C.
                                        1515 Market Street, 16th Floor
                                        Philadelphia, PA  19102-1916
                                        Telephone:  215-864-8068

                                        Attorney for Defendant Richard Miller

Dated: June 16, 2005

Daniel Segal, Esq.
Bruce Haines, Esq.
Matthew Hamermesh, Esq.
Paul W. Kaufman, Esq.
HANGLEY ARONCHICK SEGAL &
PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA  19103-6933
Telephone:  215-568-6200

Attorneys for Defendant Terry W. Cady

Dated: June 16, 2005

Stuart J. Chanen, Esq.
Leah J. Domitrovic, Esq.
Matthew J. Cannon, Esq.
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street
Suite 1600
Chicago, IL  60661-3693
Telephone:  312-902-5200

Jeffrey S. Saltz, Esq.
LAW OFFICES OF JEFFREY S. SALTZ, P.C.
1515 Market Street, Suite 1000
Philadelphia, PA  19101
Telephone:  215-523-5317

Attorneys for Defendant Dolphin Medical Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June 2005 true and correct copies of Moving Defendants' Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292(b) and the Memorandum of Law in Support were served upon the following counsel:

**Via Federal Express:**

Michael R. Karnuth
Clinton A. Krislov
KRISLOV & ASSOCIATES, LTD.
Civic Opera Building, Suite 1350
20 North Wacker Drive
Chicago, IL 60606
*Counsel for Plaintiffs*

Steven A. Schwartz
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
1 Haverford Center
Haverford, PA 19041
*Counsel for Plaintiffs*

**Via First Class Mail:**

Richard L. Scheff
MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street, 28th Floor
Philadelphia, PA 19109
*Counsel for Michael O'Hanlon*

Kevin F. Berry
William J. Taylor
COZEN O'CONNOR
1900 Market Stret
Philadelphia, PA 19103
*Counsel for Anthony Turek*

**Via First Class Mail:**

Darren J. Check
Andrew L. Barroway
SCHIFFRIN & BARROWAY LLP
280 King of Prussia Road
Radnor, PA 19087
*Counsel for Stephen Bence, IV*

Kelly D. Eckel
Robert E. Kelly
Matthew A. Taylor
DUANE MORRIS, LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103
*Counsel for John Boyle*

Peter J. Weidman
THE LAW OFFICE OF PETER J.
WEIDMAN
600 West Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
*Counsel for Gerald Cohn*

Deborah R. Gross
Susan R. Gross
LAW OFFICES OF BERNARD M.
GROSS, P.C.
1515 Locust Street, 2nd Floor
Philadelphia, PA 19102
*Counsel for Wolson Group*

M. Richard Komins
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
*Counsel for Thomas Sciba*

John E. Riley
VAIRA & RILEY
1600 Market Street, Suite 2650
Philadelphia, PA 19103
*Counsel for On Cure Technologies*

Laurence S. Shtasel
BLANK ROME, LLP
One Logan Square
Philadelphia, PA 19103
*Counsel for Canadian Imperial Bank of
Commerce Trust Company*

Gregory Ballard
Gregory A. Markel
CADWALADER WICKERSHAM & TAFT
LLP
One World Financial Center
New York, NY 10281
*Counsel for Merrill Lynch*

Edward F. Mannino
David L. Comerford
Jeffery A. Dailey
Suzanne Marie Sweeney
AKIN GUMP STRAUSS HAUER & FELD
LLP
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA 19103
*Counsel for Deloitte & Touche*

Maura E. Fay
Dawn Zubrick
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
*Counsel for Steven Garfinkel*

Robert A. Kauffman
BERGER & MONTAGUE
1622 Locust Street
Philadelphia, PA 19103
*Counsel for Gottlieb Family Foundation
Trust*

David M. Laigaie
Gregory P. Miller
Michael A. Morse
Stephen G. Stroup
MILLER ALFANO & RASPANTI, P.C.
1818 Market Street, Suite 3402
Philadelphia, PA 19103
*Counsel for Harry Roberts*

William J. O'Brien
DELANEY & O'BRIEN
325 Chestnut Street, Suite 1212
Philadelphia, PA 19106
*Counsel for Radnet Management*

Michael D. O'Mara
C. Clark Hodgson, Jr.
STRADLEY, RONON, STEVENS &
YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
*Counsel for Merrill Lynch*

Patricia M. Hamill
Paul J. Greco
CONRAD O'BRIEN, GELLMAN &
ROHN, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102
*Counsel for Richard Miller*

Jeffrey W. Sarles
Nicole Byrd
Robert J. Kriss
MAYER BROWN ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
*Counsel for Canadian Imperial Bank of Commerce Trust Company*

Bruce M. Cohen
Robert G. Martin
Scott Richard Lord
COHEN & LORD, P.C.
4720 Lincoln Blvd., Suite 200
Marina Del Rey, CA 90292
*Counsel for Radnet Management*

William P. Quinn
David W. Marston, Jr.
Karen Pieslak Pohlmann
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103
*Counsel for John McHugh, Nathan Shapiro, and William Goldberg*

Julian Friedman
Maureen Nakly
STILLMAN & FRIEDMAN
425 Park Avenue
New York, NY 10022
*Counsel for Gerald Cohn*

Stuart J. Chanen
Leah J. Domitrovic
KATTEN, MUCHIN, ZAVIS, ROSENMAN
525 West Monroe Street, Suite 1600
Chicago, IL 60661-3693
*Counsel for Dolphin Medical*

Jeffrey Saltz
LAW OFFICES OF JEFFREY SALTZ, PC
1515 Market Street, Suite 1000
Philadelphia, PA 19101
*Counsel for Dolphin Medical*

Daniel Segal
Bruce Haines
Matthew Hamermesh
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square
27th Floor
Philadelphia, PA 19103-6933
*Counsel for Terry Cady*

David S. Hoffner
DECHERT LLP
30 Rockefeller Plaza
New York, New York, 10112
*Counsel for On Cure Technologies*

Alessandro Martuscelli
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
*Counsel for On Cure Technologies*

Amy L. Kurland
U.S. ATTORNEY'S OFFICE
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
*Counsel for United States of America*

William J. Leonard
OBERMAYER, REBMANN, MAXWELL & HIPPEL, LLP
1617 John F. Kennedy Blvd.
19th Floor, One Penn Center
Philadelphia, PA 19103
*Counsel for Gerald Cohn*

/s/ Christopher J. Huber _____