**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | **Case No. 2:03-CV-5336** |
| **In Re DVI, Inc. Securities Litigation** | : | |
| | : | **Hon. Legrome D. Davis** |

**LEAD PLAINTIFF'S OMNIBUS OPPOSITION TO**
**DEFENDANTS' MOTIONS FOR RECONSIDERATION OR, ALTERNATIVELY,**
**FOR INTERLOCUTORY APPEAL PURSUANT TO 28. U.S.C. ' 1292(b),**
**OF COURT'S MAY 31, 2005 DECISION**

# TABLE OF CONTENTS

**Table of Authorities** ........ iv

**I. BACKGROUND** ........ 2

**A. The Court's Consideration of Defendants' Initial Motions to Dismiss** ........ 2

**B. Defendants' Grounds For Seeking Reconsideration and Interlocutory Appeal Are Inadequate** ........ 3

**ARGUMENT**

**II. ALL DEFENDANTS FAIL TO SATISFY ANY OF THE STANDARDS FOR GRANTING MOTIONS FOR RECONSIDERATION** ........ 3

**A. Standards for Reconsideration Motions** ........ 3

**B. Merrill Lynch's Rehashed Arguments Do Not Identify Any Error in This Court's Decision** ........ 5

1. Plaintiffs Meet Both the "Purchase and Sale" and "In Connection With" Requirements of Rule 10b-5(b) ........ 5

2. Plaintiffs Satisfy the Requirements of Transaction and Loss Causation, and Reliance ........ 7

3. Plaintiffs Adequately Pled Scienter Against Merrill Lynch ........ 8

**C. The Goldberg Motion Also Fails to Identify Any Clear Error In This Court's Decision** ........ 9

**D. The Cady Motion Misunderstands the Court's Opinion and Provides No Justification For Reconsideration** ........ 11

**III. DEFENDANTS ALSO FAIL TO SATISFY THE STANDARDS FOR AN INTERLOCUTORY APPEAL** ........ 12

**A. Standards For Granting Motions For Interlocutory Appeal** ........ 12

**B. Merrill Lynch Fails to Meet the Standards For Granting Interlocutory Appeals** ........ 13

**C. The PreGar Motion's Two Certified Questions Fail to Satisfy the Standards For Granting an Interlocutory Appeal** ........ 14

1. Rule 10b-5(a) and (c) are Not Limited to "Market Manipulation" Claims ....15

2. The Court's Decision Does Not Support "Aiding and Abetting" Liability ....17

**D. Deloitte's Motion For Interlocutory Appeal Fails to Satisfy the Applicable Standards** ....18

**CONCLUSION** ....20

# TABLE OF AUTHORITIES

## Cases

Burlington Coat Factory Sec. Litig.,
114 F.3d 1410 (3d Cir. 1997)....................16

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
511 U.S. 164 (1994)....................17, 18

Cooper v. Pickett,
137 F.3d 616 (9th Cir. 1997)....................16, 18

Deptford Township Board of ed. v. Dept. of Ed. of the State of New Jersey,
248 F. Supp. 2d 368 (D.N.J. 2003)....................4

Douris v. Schweiker,
229 F. Supp. 2d 391 (E.D. Pa. 2002)....................3, 4

Dura Pharmaceuticals, Inc. v. Broudo,
__ U.S. __, 125 S. Ct. 1627 (April 19, 2005)....................7

Franklin Prescriptions, Inc. v. The New York Times Co.,
267 F. Supp. 2d 425 (E.D. Pa. 2003)....................12

GFL Advantage Fund, Ltd. v. Colkitt,
272 F.3d 189 (3d Cir. 2001)....................16, 17

Helfrich v. Lehigh Valley Hosp.,
2005 WL 1715689 (E.D. Pa. 2005)....................5

Herman & MacLean v. Huddleston,
459 U.S. 375 (1983)....................16

In re American Business Financial Services, Inc. Sec. Litig.,
2005 WL 1324880 (E.D. Pa. June 2, 2005)....................9

In re AOL Time Warner, Inc. Sec. & ERISA Litig.,
2004 WL 992991 (S.D.N.Y. May 5, 2004)....................15, 16

In re Enron Corp. Deriv. and ERISA Litig.,
235 F. Supp. 2d 549 (S.D. Tx. 2002)....................16

In re Global Crossing Ltd. Sec. Litig.,
322 F. Supp. 2d 319 (S.D.N.Y. 2004)....................16, 19

In re Learnout & Hauspie Sec. Litig.,
236 F. Supp. 2d 161 (D. Mass. 2003) ....................................................16

In re Recoton Corp. Sec. Litig.,
258 F. Supp. 2d 1130 (M.D. Fla. 2005)....................................................19

In re Royal Ahold N.V. Sec. & ERISA Litig.,
2004 WL 2955934 (D. Md. Dec. 21, 2004)................................................16

Jones v. Intelli-Check, Inc.,
724 F. Supp. 2d 615 (D. N.J. 2003) ..........................................................16

Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir. 1974) ..............................................12

Kitzmiller v. Dover Area School Dist.,
388 F. Supp. 2d 484 (M.D. Pa. 2005) ....................................................8, 9

Koken v. Pension Benefit Guar. Corp.,
381 F. Supp. 2d 437 (E.D. Pa. 2005) ........................................................13

Lentell v. Merrill Lynch & Co., Inc.,
396 F.3d 161 (2d Cir. 2005).......................................................................19

Orson, Inc. v. Miramax Film Corp.,
867 F. Supp. 319 (E.D. Pa. 1994) ..............................................................20

Rohrbach v. AT&T Nassau Metals Corp., 915 F. Supp. 712 (M.D. Pa. 1996) ...................4

Santa Fe Indus., Inc. v. Green,
430 U.S. 462 (1977).............................................................................15, 16

Semerenko v. Cendant Corp.,
223 F.3d 165 (3d Cir. 2000).........................................................................6

Skretvedt v. E.I. DuPont De Nemours and Co.,
2000 WL 33341051 (D. Del. Oct. 31, 2000) ...............................................4

Smith v. City of Chester,
155 F.R.D. 95 (E.D. Pa. 1994) .................................................................4, 10

Superintendent of Ins. v. Bankers Life & Cas. Co.,
404 U.S. 6 (1971)............................................................................................16

Taylor v. City of Philadelphia,
2004 WL 1427145 (E.D. Pa. 2004) ..........................................................4, 10

United Artists Theatre Circuit, Inc. v. Township of Warrington, PA.,
316 F.3d 392 (3d Cir. 2003)....................3

Urbach v. Sayles,
779 F. Supp. 351 (D.N.J. 1991) ....................12

**Statutes**

15 U.S.C. § 78u-4(b)(2) ....................10

15 U.S.C. § 78j(b) ....................15, 16

20 U.S.C. § 1292(b) ....................12

Lead Plaintiffs respond in opposition to five separate motions for reconsideration and/or interlocutory appeal of this Court's May 31, 2005 decision denying, in part, Defendants' motions to dismiss, as mere rehashes of their original arguments and misstatements of this Court's ruling.

These five motions were filed by fourteen of the eighteen named Defendants[1] and are summarized and referred to herein as follows:

(1) Defendants William S. Goldberg ("Goldberg"), John E. McHugh ("McHugh), Nathan Shapiro ("Shapiro"), Gerald Cohn ("Cohn"), Harry T.J. Roberts ("Roberts"), Steven R. Garfinkel ("Garfinkel"), Richard E. Miller ("Miller"), Terry W. Cady ("Cady"), John P. Boyle ("Boyle"), Deloitte & Touche LLP ("Deloitte"), PresGar Imaging LLC ("PresGar") and Dolphin Medical, Inc. ("Dolphin"), moved for reconsideration or, alternatively, certification for interlocutory appeal (Docket No. 188) (the "Goldberg Mem. __");

(2) Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") also filed a separate motion for reconsideration or, alternatively, certification for interlocutory appeal (Docket No. 189) (the "Merrill Mem. __");

(3) Defendants Cady, Anthony Turek ("Turek") and Miller filed a separate motion for clarification and reconsideration (Docket No.191) (the "Cady Mem. __");

(4) Defendants PresGar, Dolphin, Miller and Cady filed a motion for interlocutory appeal (Docket No. 190) (the "PresGar Mem. __"); and

(5) Defendant Deloitte filed a joinder to the PresGar interlocutory appeal motion (Docket No. 195) (the "Deloitte Mem. __").

---

[1] Michael A. O'Hanlon ("O'Hanlon") and RadNet Management Inc. ("RadNet"), both of whom have claims pending against them, have not sought reconsideration or interlocutory appeal. In addition, OnCure Medical Corp. ("OnCure), who did not file or join in a motion, and Dolphin, have entered into Stipulations of Settlements with Lead Plaintiffs, which are in the process of being finalized for the Court's approval.

Finally, Canadian Imperial Bank of Commerce Trust Company (Bahamas) Limited, as trustee of trusts for the benefit of the grandchildren of A.N. Pritzker ("CIBC"), was dismissed from this case pursuant to this Court's May 31, 2005 decision. Lead Plaintiffs, on September 30, 2005, filed a motion to amend the Complaint to add claims against certain specific Pritzker individuals and entity(ies). That motion, which is unopposed, is currently pending.

# I. BACKGROUND

The May 31, 2005 Order sustaining, in part, the allegations contained in Plaintiffs' Third Amended Consolidated Complaint ("Complaint"), which Defendants challenge, is not only supported by ample and well-pled factual allegations, but also by the almost 200-page investigatory report by the DVI Bankruptcy Court-appointed Examiner, who investigated the demise of DVI and found that several massive frauds were likely committed by individuals and entities both within and outside the Company. *See*, Examiner's Report at 6-8, 10-11, 13-16, 186-88. That report is further supported by thousands of pages of documents included as exhibits and appendices to the Examiner's Report. The Examiner acknowledged, however, that his report was just the tip of the iceberg and that more is likely to be uncovered. *See*, Examiner's Report at 187-88. In light of the Examiner's report and conclusions, DVI's complete and rapid disintegration, and this Court's well-reasoned decision, the Defendants' motions simply waste this Court's time by asserting little more than their dissatisfaction with the Examiner's findings and this Court's opinion.

## A. The Court's Consideration of Defendants' Initial Motions to Dismiss

On or about November 1, 2004, Defendants filed sixteen separate motions to dismiss Plaintiffs' Complaint. Plaintiffs, on January 25, 2005, filed an omnibus response in opposition to all sixteen motions to dismiss. After replies were received by Defendants, an all-day hearing was held on March 4, 2005, to address all motions and issues.

On May 31, 2005, the Court denied all Defendants' motions to dismiss except the Section 20(a) claims brought against CIBC, the Rule 10b-5(b) claims asserted against

Defendants Turek, Cady and Miller, and the Rule 10b-5(a) and (c) claims against OnCure for Class Members who bought DVI securities prior to July 30, 1999.

**B. Defendants' Grounds For Seeking Reconsideration and Interlocutory Appeal Are Inadequate**

In challenging this Court's May 31, 2005 decision, Defendants rehash the same arguments they raised in their briefs and at oral argument, and merely contend that this Court's decision was wrong. As explained below, these grounds do not satisfy the narrow standards for seeking reconsideration or interlocutory appeal. Therefore, this Court should deny each motion.

## ARGUMENT

## II. ALL DEFENDANTS FAIL TO SATISFY ANY OF THE STANDARDS FOR GRANTING MOTIONS FOR RECONSIDERATION.

All three motions for reconsideration (contained in the Merrill, Goldberg and Cady Motions) should be denied because they merely rehash the same rejected arguments.

### A. Standards For Reconsideration Motions.

"Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." Douris v. Schweiker, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002) (quoting Continental Casualty Co. v. Diversified Inds. Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)). The circumstances under which such a motion is granted are few and exceptional. United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F. 3d 392, 403 (3d Cir. 2003). The moving parties, in this case Defendants, carry the burden of establishing one of the three narrow grounds allowed. *See, e.g.*, Rohrbach v. AT&T Nassau Metals Corp., 915 F. Supp. 712, 714 (M.D. Pa.

1996) (holding that the movant "bears the burden"). Those three grounds include: (1) an intervening change in the controlling law, (2) new evidence not available when the court denied the motion to dismiss, or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. Taylor v. City of Philadelphia, 2004 WL 1427145, *1 (E.D.Pa.,2004) (reconsideration denied where plaintiff merely rehashed arguments in their summary judgment motion); Douris, 229 F.Supp.2d at 407- 408 (denied reconsideration where party failed to provide newly discovered evidence, intervening law, or clear error or manifest injustice by court) (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).

A "mere recapitulation of the cases and arguments considered" does not satisfy the moving party's burden. Deptford Township Board of Ed. v. Dept. of Ed. of the State of New Jersey, 248 F.Supp.2d 368, 381 (D.N.J. 2003) (citing Hatco Corp. v. W.R. Grace & Co. Conn., 849 F.Supp. 987, 990 (D.N.J. 1994)). Likewise, "[a] motion for reconsideration is not properly grounded on a request that the Court simply rethink a decision it has already made", Douris, 229 F. Supp. 2d at 408 (*citing*, Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)), or because a party disagrees with a court's findings. Skretvedt v. E.I. DuPont De Nemours and Co., 2000 WL 33341051, *8 (D. Del. Oct. 31, 2000) (noting "that disagreement with [court's] findings is never an appropriate basis for a motion for reconsideration") (*citing, e.g.*, G-69 v. Degnan, 748 F. Supp. 274 (D. N.J. 1990)); *see also*, Taylor, 2004 WL 1427145, *1 (*citing*, Smith v. City of Chester, 155 F.R.D. 95, 97 (E.D.Pa.1994)). Additionally, the motion may not bring new arguments that could have (or should have) been raised in support of the original motion. Helfrich v. Lehigh Valley Hosp., 2005 WL 1715689, *3

(E.D.Pa. 2005) (denying party's motion for reconsideration because no new evidence, law, or clear error were presented).

The Merrill, Goldberg and Cady motions do not raise any intervening change in the law or newly discovered evidence as grounds. Rather, they solely contend, erroneously, that the Court's May 31, 2005 decision was based upon clear error resulting in manifest injustice.

**B. Merrill Lynch's Rehashed Arguments Do Not Identify Any Errors In This Court's Decision.**

Merrill Lynch raises four arguments for reconsideration, each of which it contends this Court "overlooked" or "ignored" when rendering its May 31, 2005 decision. Merrill Mem. 1. Each of Merrill Lynch's arguments, however, merely and impermissibly seek a second bite at the apple, erroneously ignores the Court's consideration of Merrill's arguments, and just highlights its unsurprising disagreement with this Court's conclusions.

1. Plaintiffs Meet Both the "Purchase and Sale" and "In Connection With" Requirements of Rule 10b-5(b).

Merrill Lynch first reargues that this Court ignored its challenges to Plaintiffs' Rule 10b-5(b) claim, contending that because the material misstatements issued by Merrill Lynch were contained in prospectuses issued in relation to DVI asset-backed securities and not DVI common stock or Senior Notes, Plaintiffs' purchases and/or sales of DVI common stock and Senior Notes were not in connection with the alleged misstatements. In support, Merrill Lynch reasserts the same cases and raises the same arguments that it raised in its original opening and reply briefs, and at oral argument. Merrill Lynch fails, however, to acknowledge that the prospectuses were *issued under the*

*DVI name*, espoused material misstatements regarding DVI's financial health, and were publicly disseminated for all investors, including DVI common stock and Senior Noteholders, to consider.[2] Given that the securitization prospectuses issued to the public by Merrill Lynch contained several material misstatements and omissions regarding DVI, Plaintiffs' purchases and sales were clearly made in connection with those misrepresentations.

Moreover, Merrill Lynch again ignores controlling Third Circuit precedent which directly addressed and resolved the issues that Merrill Lynch raises. *See*, Semerenko v. Cendant Corp., 223 F.3d 165 (3d Cir. 2000) (holding that a class of persons who purchased shares of "ABI" during an unsuccessful tender offer by Cendant, asserted a Section 10(b) claim against Cendant based upon Cendant's disclosure of significant accounting irregularities). Under Semerenko, which Merrill Lynch does not, nor can it, distinguish, Plaintiffs need not have purchased the security of the company issuing the false and misleading statements, but rather need only show "that the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated." Semerenko 223 F.3d at 176. Consequently, the fact that Plaintiffs purchased DVI securities rather than DVI securitization securities is, pursuant to Semerenko, irrelevant.

Finally, Merrill Lynch's argument that this Court ignored its challenges is belied by this Court's decision, which specifically recognizes the direct connection of the

[2] Indeed, as set forth in Plaintiffs' Brief in opposition to Defendants' motions to dismiss, analysts covering DVI common stock and Senior Notes reported that DVI's ability to securitize its assets (through Merrill Lynch's underwriting and issuance of the securitization prospectuses) was critical to DVI's viability. *See*, Lead Plaintiffs' Combined Memorandum of Law In Opposition to Defendants' Motions to Dismiss at p.178, Exs. 32-34. Consequently, the publicly disseminated misstatements contained in the securitization prospectuses were clearly in connection with the decline of DVI's common stock and Senior Notes.

securitizations to DVI's fraudulent finances, i.e., that the misstatements at issue with respect to Merrill were those contained in the "prospectuses for DVI securitizations", Memorandum & Order ("Mem. Order __") at 15 (*citing*, Cmpl. **&&**334-37 and 340), and that "[t]he practical effect of securitizations was that they improved DVI's balance sheet and provided it with immediate income." Mem. Order 3 (*citing*, Cmpl. **&**71).

2. Plaintiffs Satisfy The Requirements of Transaction and Loss Causation, and Reliance.

Merrill Lynch also parrots the same arguments raised to this Court in its initial and reply briefs, during oral argument, and in its post-hearing submission[3] with respect to transaction causation, loss causation and reliance. Merrill Mem. 4-5. Contrary to Merrill Lynch's contentions, this Court's decision correctly points out that Plaintiffs adequately alleged that Merrill Lynch's misstatements in the securitization prospectuses and its participation in a deceptive scheme to repay itself in full at the detriment of the investor Class was adequate for purposes of causation and reliance. *See*, Mem. Order 3 ("Plaintiffs allege, in part, that DVI, through the Defendants, abused this securitization process, was lax in its credit policies, and both failed to disclose and actively misrepresented these practices, artificially inflating the stock price and, ultimately, bringing about DVI's demise"); and Mem. Order 5-6 ("Plaintiffs allege that Merrill generated several million dollars in fees for itself and then '[r]ecognizing that DVI was a house of cards on the brink of collapse, Merrill Lynch concocted a fraudulent scheme . . .

[3] On April 27, 2005, Merrill Lynch submitted a letter to the Court arguing that the U. S. Supreme Court's decision in Dura Pharmaceuticals, Inc. v. Broudo, __ U.S. __, 125 S. Ct. 1627 (April 19, 2005) supported its loss causation argument. Plaintiffs filed a response with the Court on May 10, 2005, explaining that Dura did not undermine the loss causation and pleading standards applied by Plaintiffs. Notably, both submissions were filed several weeks before this Court's decision. Merrill Lynch reiterates the same arguments in its motion for reconsideration as it raised in its post-submission letter.

to use collateral pledged to others and proceeds from securitization pool #32 as a means of securing and/or paying off Merrill's loans to DVI. Prior to DVI's bankruptcy petition, Merrill Lynch was paid in full or substantially paid on its line of credit to DVI. . . . As a result, Merrill Lynch was apparently able to cash out shortly before the DVI house of cards came crashing down, leaving those in the investing public, who Merrill solicited, holding worthless DVI paper.") (*citing*, Compl. &12).

The Dura Pharmaceutical decision, which Merrill Lynch relies upon in its motion, did not, contrary to Merrill's suggestion, instruct a rigid pleading requirement nor did it even set forth specific criteria for pleading loss causation. Indeed, the Court rejected amici and Dura counsel's arguments attempting to impose a high pleading hurdle and, instead, held that pleading loss causation must only satisfy Rule 8's notice pleading standards, which requires "only a short and plain statement". 125 S. Ct. at 1629. Those requirements, as this Court's decision indicates, were clearly met here.

3. Plaintiffs Adequately Pled Scienter Against Merrill Lynch.

In attacking this Court's May 31, 2005 decision, Merrill Lynch does not hide that its basis for seeking reconsideration on the issue of scienter is just that it completely disagrees with this Court's conclusion. Merrill Mem. 5 ("In its Order, the Court held that Plaintiffs adequately pleaded scienter against Merrill Lynch on the basis of two paragraph [sic], paragraphs 344 and 350 of the complaint. Order at 17. Neither of the two paragraphs gives rise to the 'strong inference' required under the PSLRA."). Merrill Lynch's disagreement with this Court's conclusion, however, is not a basis for granting reconsideration. Kitzmiller v. Dover Area School Dist., 388 F. Supp. 2d 484, 488 (M.D. Pa. 2005) ("A motion for reconsideration is not to be used as a means to reargue matters

already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.").[4]

Additionally, Merrill Lynch supports its position with the same arguments rejected by this Court in the first go-around. Having already rejected it once, there is absolutely no need to indulge Merrill Lynch's misguided crusade again. Kitzmiller, 388 F. Supp. 2d at 488.[5]

### C. The Goldberg Motion Also Fails To Identify Any Clear Error In This Court's Decision.

The Goldberg Motion's only issue for reconsideration is that the Court erred by not setting forth a separate finding of scienter as to each Defendant. Goldberg Mem. 2. In support, Defendants rely on arguments they made in a motion for reconsideration filed in the related Individual Noteholder action, *WM High Yield Fund*, Case No. 04-3423-LDD (Docket No. 110), and also on the case of In re American Business Financial Services, Inc. Sec. Litig., 2005 WL 1324880 (E.D. Pa. June 2, 2005).

[4] As stated in Lead Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss at page 166, Plaintiffs adequately alleged with particularity Merrill's scienter under the motive and opportunity test:

> Plaintiffs pled, with particularity, that Merrill Lynch's motive and opportunity stemmed from its unbridled desire to expand its underwriting business and retain its other lucrative business relationships with DVI, as well as reduce its risk of loss as a DVI lender, by any means and at all costs, upon discovery of DVI's severe liquidity problems, improper lending and collateral business practices and resultant asset impairments. TAC ¶¶ 326, 330-33, 352-55, 479.

Additionally, Plaintiffs' independently and adequately pled Merrill Lynch's scienter through conscious misbehavior or recklessness. For instance, despite the abundance of red flags at DVI, Merrill Lynch failed to ensure the accuracy of the prospectus filings and engaged in highly irregular collateral transfers, thereby actively concealing DVI's scheme to falsely portray its improper business practices and tenuous liquidity. *See*, Plaintiff's Resp. to Defendants' Motions to Dismiss at 169-175.

[5] Merrill Lynch's last argument, related to the Court's decision on Plaintiffs' Rule 10b-5(a) and (c) claims, merely adopts the arguments raised in the PresGar Motion. Plaintiffs will address those matters below.

Contrary to Defendants' suggestions, while the PSLRA requires *plaintiffs* to plead scienter with particularity as to each defendant, nowhere in the PSLRA, the American Business opinion, or anywhere else, does it require *courts* to write opinions with particularity as to each defendant. Id. at *12 ("[T]he *complaint* shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.") (emphasis added) (quoting 15 U.S.C. § 78u-4(b)(2)). The fact that the American Business court chose to write and organize its opinion in a manner that dealt with each defendant separately does not mandate that all courts must follow that structure.

Notwithstanding, this Court's May 31, 2005 memorandum order references numerous allegations from Plaintiffs' Complaint and concludes that Plaintiffs properly pled scienter allegations for each Defendant. *See*, Mem. Order at 1-6, 17-18. Indeed, Plaintiffs' Complaint, as further explained in their brief in opposition to Defendants' Motions to Dismiss, sets forth in abundant detail how each Defendant meets the scienter requirement. *See*, Plaintiffs' Opp. Br. at 52-88 and Complaint at **&&**8-12, 14, 290-92, 319, 322-23, 376, and 431-37. That some of these references are contained in the Order's "Background" section is not "clear error", necessitating reconsideration, but rather this Court's exercise of its discretion and judgment as to how to issue its opinion. *See*, Taylor, 2004 WL 1427145, *1 (holding that a party's disagreement with the court does not constitute clear error of law) (*citing*, Smith, 155 F.R.D. at 97).

Additionally, this Court's rejection of the "group pleading doctrine" and "substantial participation" test, Mem. Order 11-12 and 13-14, respectively, shows that the Court specifically considered and ultimately rejected Defendants' position. By ruling

against application of these doctrines, the Court concluded that Plaintiffs must specify the statements alleged to have been misleading and each Defendants' scienter with respect to those false statements. This Court's opinion, therefore, informs the reader that it has already reviewed Plaintiffs' allegations for scienter as to each Defendant, and, importantly, has concluded that the allegations are sufficient.

Finally, to accept Defendants' arguments could result in the creation of an unworkable rule requiring that all decisions addressing pleading securities fraud claims must follow one, specific structure, and a Byzantine one, at that. Such a one-size fits all standard for court decisions is unfounded. Adopting such a rule could also result in creating a whole new basis for reconsideration motions – i.e., requiring courts to redraft their opinions, even if doing so would not affect the outcome. Not surprisingly, Defendants offer no authority in support of their position and this Court should refrain from entertaining such a request.

**D. The Cady Motion Misunderstands the Court's Opinion and Provides No Justification for Reconsideration.**

The Cady Motion erroneously argues that since the Court dismissed Plaintiffs' Rule 10b-5(b) claims against Defendants Cady, Turek and Miller, it should have, consequently, concluded that Plaintiffs' Rule 10b-5(a) and (c) claims fail as well for lack of scienter. The Cady Motion's argument, however, is fundamentally flawed because when this Court addressed Plaintiffs' Rule 10b-5(b) claims, the Court's opinion never stated that Cady, Turek and Miller universally did not act with scienter; but rather, only that these Defendents did not make "any statements or signed any Company documents" which would subject them to Rule 10b-5(b) liability. Mem. Order at 13. Because Rule 10b-5(a) and (c) claims do not require specific statements or omissions, only that the

"defendant engaged in deceptive or manipulative conduct", the Court's opinion was not erroneous in holding these defendants liable for the Rule 10b-5(a) and (c) claims. Indeed, as this Court's opinion acknowledges, ample scienter allegations exist against these Defendants. *See*, Mem. Order at 3-5, 9; *see also*, Complaint at **&&**299-301.

## III. DEFENDANTS ALSO FAIL TO SATISFY THE STANDARDS FOR AN INTERLOCUTORY APPEAL

All four motions for interlocutory appeal (contained in the Merrill Lynch, Goldberg, PresGar and Deloitte Motions) should be denied because Defendants fail to show, among other things, that a substantial ground for difference of opinion exists.

### A. Standards For Granting Motions For Interlocutory Appeal

Interlocutory appeals pursuant to 28 U.S.C. § 1292(b) are only granted under even more limited, exceptional, narrowly-tailored, circumstances than reconsideration. *See, e.g.*, Urbach v. Sayles, 779 F.Supp. 351, 353 (D.N.J. 1991); Franklin Prescriptions, Inc. v. The New York Times Co., 267 F.Supp.2d 425, 439 (E.D.Pa. 2003). Section 1292(b) provides district courts with discretion to grant interlocutory appeals only if the Order

> (1)involve[s] a controlling question of law, (2) offers substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately [would] materially advance the ultimate termination of the litigation.

Franklin Prescriptions, 267 F.Supp.2d at 439 (quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir.1974) (interpreting 28 U.S.C. § 1292(b)). "The Third Circuit has recognized that these requirements should be stringently observed." Urbach, 779 F.Supp. at 353 (*citing*, Milbert v. Bison Laboratories, Inc., 260 F.2d 431, 433 (3d Cir. 1958)).

The party moving for interlocutory appeal bears the burden of showing that an immediate appeal is warranted, which requires that "exceptional circumstances justify departure from the basic policy against piecemeal litigation and of postponing appellate

review until after the entry of a final judgment." Koken v. Pension Benefit Guar. Corp., 381 F.Supp.2d 437, 441 (E.D.Pa.,2005) (*citing*, Albert v. Nationwide Mut. Fire Ins. Co., 2001 WL 34035315, at 16-17 (E.D.Pa. Sept. 4, 2001)).

As explained below, none of Defendants' motions even come close to satisfying the requirements for granting an immediate appeal.

**B. Merrill Lynch Fails To Meet The Standards For Granting Interlocutory Appeals Because Its Motion Rests Only On Its Dispute With The Court's Decision.**

Merrill Lynch's motion briefly raises an alternative request for immediate appeal in the event the Court declines to reconsider. Merrill Mem. 7. The only ground Merrill Lynch raises in support of this argument is that substantial ground for difference of opinion exists "on these questions". Id. Merrill Lynch's scant, one-half page argument on this entire matter, however, completely fails to identify the issues where a difference of opinion exists or how other courts have differed or would differ with this Court's conclusions. Without presenting specific questions for interlocutory review or applying these specific questions to the interlocutory appeal standards, Merrill Lynch has not satisfied its burden of demonstrating that exceptional circumstances justify departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment.

Even if this Court were to assess the issues raised by Merrill Lynch in its motion for reconsideration, to determine whether they would be appropriate for interlocutory appeal, none of those issues satisfy the substantial ground for difference of opinion standard. With respect to Merrill Lynch's standing and "in connection with" arguments, Plaintiffs have showed that misstatements regarding DVI securities were being issued in

the securitization prospectuses issued by Merrill Lynch as underwriter. Thus, the securities Plaintiffs' purchases did indeed relate to the misstatements contained in the securitization prospectuses. Moreover, and importantly, the Third Circuit already addressed and rejected Merrill Lynch's argument. *See*, Semerenko.

Likewise, no substantial difference of opinion exists with respect to this Court's decision on transaction causation, loss causation, and reliance. Indeed, this Court's decision comports with the Supreme Court's Dura Pharmaceuticals decision, which only requires that loss causation be pled pursuant to Rule 8's notice requirements.

Finally, with respect to Merrill Lynch's disagreement with the Court's opinion that Plaintiffs' adequately pled scienter, it would be inappropriate at this early stage of the litigation to certify a question for immediate appeal to address whether the level of conduct pled, which this Court found sufficient, was adequate. This Court's conclusion was based on specific allegations, including, that Merrill Lynch gained millions of dollars in fees, knew DVI was a house of cards on the brink of collapse, concocted a fraudulent scheme to use double pledged collateral in order to secure their loans to DVI, then was paid in full or substantially paid just before the DVI house of cards came crashing down, leaving those in the investing public, who Merrill solicited, holding worthless DVI paper. Mem. Order at 5-6. Merrill Lynch points to no case addressing these same or similarly pled facts, where the court ruled differently.[6]

### C. The PresGar Motion's Two Certified Questions Fail to Satisfy The Standards For Granting An Interlocutory Appeal Because The Court's Decision Does Not Conflict With Existing Authority.

[6] The Goldberg Motion, like Merrill's motion, gives short shrift in support of its request for immediate appeal of this Court's conclusion that Plaintiffs adequately pled scienter. The Goldberg Motion's one-sentence argument provides no case authority and should be rejected out of hand.

Defendants PresGar, Dolphin, Miller, and Cady present two questions for certification for interlocutory appeal. As explained below, both questions fail to satisfy the applicable standards.

1. Rule 10b-5(a) and (c) Are Not Limited To "Market Manipulation" Claims.

Defendants' first argue, erroneously, that this Court's decision conflicts with cases which narrowly construe Rule 10b-5(a) and (c) liability. Defendants contend that such claims are limited to "market manipulation", which they further contend is a term of art, applicable only to such practices as "wash sales", "matched orders" or "rigged prices". PresGar Mem. 5-6. In support of this contention, Defendants blatantly mischaracterize the Supreme Court's decision in Santa Fe Indus., Inc. v. Green, 430 U.S. 462 (1977). Defendants overlook that Section 10(b) prohibits the use of "any manipulative or deceptive device or contrivance," 15 U.S.C. '78j(b), and does not prohibit merely "market manipulation." Rejecting Defendants' argument, the courts have held that "the Santa Fe list of manipulative practices is clearly not exhaustive; 10b-5(a) and (c) claims need not contain the magic words 'wash sales, matched orders, or rigged prices' to be valid." In re AOL Time Warner, Inc. Sec. & ERISA Litig., 2004 WL 992991 at *14 (S.D.N.Y. May 5, 2004) (allowing 10b-5(a) and (c) claims to proceed against defendants that engaged in scheme to inflate AOL's reported revenue through sham transactions and accounting improprieties and rejecting defendants' suggested narrow interpretation of manipulative acts). Indeed, Santa Fe itself makes this clear: "No doubt Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices." Santa Fe, 430 U.S. at 475-477 (further stating, "10(b) must be read flexibly, not technically and restrictively").

Moreover, Defendants' suggestion that only one other case, In re Global Crossing Ltd. Sec. Litig., 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004), supports Plaintiffs' interpretation of Rule 10b-5(a) and (c) liability, is completely incorrect. *See, e.g.,* AOL Time Warner, 2004 WL 992991 at *14; In re Royal Ahold N.V. Sec. & ERISA Litig., 2004 WL 2955934 at *26 (D. Md. Dec. 21, 2004) ("There is no requirement that claims under Rule 10b-5(a) and (c) allege illegal trading or market manipulation"); In re Enron Corp. Deriv. and ERISA Litig., 235 F. Supp. 2d 549, 577-81, 589 fn31 (S.D. Tx. 2002) (liability under Rule 10b-5(a) and (c) "is not limited to the making of a material misstatement or omission, nor to a few very technical forms of manipulation") (*citing*, Santa Fe, 430 U.S. at 477; Herman & MacLean v. Huddleston, 459 U.S. 375, 386 (1983); Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 11 fn7 (1971); Cooper v. Pickett, 137 F. 3d 616, 624 (9th Cir. 1997)); In re Learnout & Hauspie Sec. Litig., 236 F. Supp. 2d 161, 173 (D. Mass. 2003) (claim stated under Rule 10b-5(a) and (c) where it was alleged that the defendants participated in a fraudulent scheme to create ficticious revenue through bogus transactions with sham entities). The Third Circuit has even instructed a broad application of Rule 10b-5(a) and (c) liability. *See*, Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1414 (3d Cir. 1997)("Section 10(b) provides a broad prohibition on the use of 'manipulative or deceptive devices' in connection with the purchase or sale of a security.") (*citing*, 15 U.S.C. '78j(b)).

Furthermore, contrary to Defendants' position, this Court's decision in no way conflicts with the holdings of GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 207 (3d Cir. 2001), or Jones v. Intelli-Check, Inc., 274 F. Supp. 2d 615, 626 (D. N.J. 2003). The Colkitt court held that defendants' affirmative defense of market manipulation under

Section 29(b) of the Securities and Exchange Act failed because he could not demonstrate that the plaintiff had "engaged in any deceptive or manipulative conduct by injecting false inaccurate information into the marketplace or creating a false impression of supply and demand for stock." 272 F.3d at 207. The court relied on Santa Fe only to define "market manipulation" and not to limit the scope of liability under Section 10(b) or Rule 10b-5. Likewise, the Jones court did not address scheme liability at all because such a claim under Rule 10b-5(a) and (c) were not raised by plaintiffs. That these and other courts in this circuit have only addressed "market manipulation" or Rule 10b-5(b) liability does not foreclose the viability of the type of Rule 10b-5(a) and (c) claims asserted here.

Consequently, Defendants have completely failed to demonstrate that there is any substantial ground for difference of opinion with respect to resolution of the Court's denial of Defendants' motions to dismiss Plaintiffs' Section 10(b) and Rule 10b-5(a) and (c) claims.[7]

2. The Court's Decision Does Not Support "Aiding and Abetting" Liability.

The Special Relationship Entity ("SRE") Defendants, PresGar and Dolphin, alone argue that as outsiders to DVI they, at most, were aiders and abetters, and, as such, cannot be held liable under Rule 10b-5. In support, the SREs rely on the holding of Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994). PresGar Mem. at 10. The SREs, however, fail to acknowledge that Plaintiffs' allegations support their status as much more than "outsiders" or, as they describe it,

[7] Defendants' suggestion that appellate review would be appropriate because the law in this area is "sparse" misstates the standards for granting immediate appeals. Indeed, Defendants cite no case which granted such a motion on that ground.

"business partners". Indeed, Plaintiffs pled that these entities were so closely aligned with DVI that even DVI's auditors recommended that their financials be consolidated. *See*, Complaint &&49, 309, 318, 464-65. These close relationships enabled DVI to use the SREs to offload and conceal many of their troubled loans.

Moreover, and not surprising, the SREs ignore Central Bank's conclusion that "[a]ny person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5" Id. at 191; *see also*, Cooper v. Pickett, 137 F.3d 616, 624 (9th Cir. 1997) ("Central Bank does not preclude liability based on allegations that a group of defendants acted together to violate the securities laws, as long as each defendant committed a manipulative or deceptive act in furtherance of the scheme"). Central Bank, therefore, supports, not refutes, this Court's decision. *See, e.g.*, Mem. Order at 3-4; Complaint at ¶ 7.

Consequently, this Court's decision is grounded in controlling law and, thus, this Court should deny Defendants' request for immediate appeal.

**D. Deloitte's Motion For Interlocutory Appeal Also Fails To Satisfy the Applicable Standards Because It Misstates This Court's Holding, Which Does Not Conflict With Existing Law.**

Deloitte's Motion only raises arguments for immediate appeal of the Rule 10b-5 (a) and (c) claims sustained against it. That motion primarily joins in the arguments raised in the PresGar Motion. Consequently, Plaintiffs incorporate herein their opposition to each of those arguments.

Deloitte also argues that the Court's opinion was erroneous as to the Rule 10b-5(a) and (c) claims against it because Plaintiffs' Complaint only alleges

misrepresentations or omissions with respect to the audit reports it issued regarding DVI. Deloitte Mem. 2-3. This untimely argument, which Deloitte failed to raise previously and, as such, should not be considered now, is incorrect. The Complaint does allege, in addition to the misrepresentations and omissions contained in Deloitte's audit reports, that Deloitte also engaged in deceptive (reckless) conduct. *See, e.g.*, Complaint **&&**377 (recklessly allowing DVI management to not obtain credit approvals when Deloitte documented this as a reportable condition); 379 (recklessly allowing DVI to recognize gains on contracts more than 180 days delinquent when Deloitte also documented this matter as a reportable condition); 380 (recklessly allowing DVI to not write-down $17 million in loans to Health Integrated Services ("HIS") when Deloitte knew, as HIS's auditors, that it was unable to repay the loans; 382 (recklessly participating in drafting and/or reviewing DVI's loan loss policy and procedures, which ultimately provided DVI an outlet to forever avoid any write-downs); 387 (recklessly allowing DVI to recognize income on loans under forbearance, especially since Deloitte criticized DVI's conduct such conduct in management letters).

Deloitte's reliance on Lentell v. Merrill Lynch & Co., Inc., 396 F. 3d 161, 177 (2d Cir. 2005) and In Re Recoton Corp. Sec. Litig., 358 F. Supp. 2d 1130 (M.D. Fla. 2005), neither of which were briefed or argued previously, is misplaced. Those cases dealt with allegations that "solely" raised misstatements and omissions under a Rule 10b-5(b) theory. In contrast, here Plaintiffs raise allegations which support both Rule 10b-5(b) and deceptive conduct claims under Rule 10b-5(a) and (c). *See, e.g.*, Global Crossing, 322 F. Supp. 2d at 334-37 (denying auditors motion to dismiss claims asserted under both theories). Consequently, since Deloitte points to no substantial conflict between this

Court's decision and other cases, Deloitte's request for immediate appeal should be rejected.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' five motions for reconsideration and/or interlocutory appeal be denied.

Dated: December 22, 2005

Respectfully submitted,

CHIMICLES & TIKELLIS LLP

By: s/ Steven A. Schwartz, Esq.
Attorney I.D. No. 50579
Kathy Meermans Esq.
Attorney I.D. No. 37846
361 W. Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633

*Plaintiffs' Liaison Counsel*

KRISLOV & ASSOCIATES, Ltd.
Clinton A. Krislov, Esq.
Michael R. Karnuth, Esq.
20 North Wacker Drive
Chicago, Illinois 60606
Phone: 312-606-0500
Fax: 312-606-0207

*Plaintiffs' Lead Counsel*

[8] Given that this litigation will proceed against Deloitte under Rule 10b-5(b), this Court should refrain from certifying the Rule 10b-5(a) and (c) issues because doing so would not materially advance the termination of the litigation. *See,* Orson, Inc. v. Miramax Film Corp., 867 F. Supp. 319, 322 (E.D. Pa. 1994) (denying interlocutory appeal where trial would "most likely occur on the remaining issues in this action regardless of the outcome of any interlocutory appeal")..