**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re DVI, Inc. Securities Litigation ) | Case No. 2:03-CV-05336 (LDD) |

## ORDER

AND NOW, this _____ day of _________________, 2011, upon consideration of Lead Plaintiffs' Motion to Clarify, Vacate, and/or Reconsider the March 28, 2011 Order Denying as Moot Lead Plaintiffs' Motion for Partial Reconsideration of the Court's September 3, 2010 Order, and Deloitte & Touche LLP's response thereto, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

___________________________________
Honorable Legrome D. Davis, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re DVI, Inc. Securities Litigation | Case No. 2:03-CV-05336 (LDD) |

**DELOITTE & TOUCHE LLP'S OPPOSITION TO LEAD PLAINTIFFS' MOTION TO CLARIFY, VACATE, AND/OR RECONSIDER THE MARCH 28, 2011 ORDER DENYING AS MOOT LEAD PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S SEPTEMBER 3, 2010 ORDER**

Defendant Deloitte & Touche LLP ("D&T") hereby opposes Lead Plaintiffs' above-referenced Motion and respectfully requests that the Motion be denied for the reasons set forth below.[1]

1. Admitted.

2. Denied as stated. Lead Plaintiffs' motion for reconsideration is not "pending argument and/or court decision." The motion was denied by the Court on March 28, 2011.

3. Admitted.

4. Denied. The Third Circuit's decision does not support Lead Plaintiffs' Motion. The portion of the Third Circuit's Opinion cited by Lead Plaintiffs related to how quickly information must be incorporated into the stock price for the market to be considered efficient. *See* Third Circuit's March 29, 2011 Order at 24-25, attached as Exhibit 1. D&T already addressed the difference between the "cause and effect" factor in analyzing market efficiency for class certification purposes and the loss causation standards applied at summary judgment, and showed that this Court correctly did not apply a multi-day window to the September 25, 2002 announcement. *See* D&T's Memorandum of Law in Opposition to Lead Plaintiffs' Motion for Partial Reconsideration at Section II -- The Court Was Correct in Not Applying a Multi-Day

[1] D&T also notes that Lead Plaintiffs' Motion violates Local Rule 7.1(c) because it is not "accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion." Local R .Civ. P. 7.1(c).

"Event Window" to the September 25, 2002 Disclosure, attached as Exhibit 2; *see also* D&T's Sur-reply in Opposition to Lead Plaintiffs' Motion for Partial Reconsideration at Section I – The Court Correctly Declined to Include the September 25, 2002 Announcement within a Purported "Four-Day Event Window", attached as Exhibit 3.

WHEREFORE, D&T respectfully requests that the Court deny Lead Plaintiffs' Motion to Clarify, Vacate, and/or Reconsider the March 28, 2011 Order Denying as Moot Lead Plaintiffs' Motion for Partial Reconsideration of the Court's September 3, 2010 Order.

Respectfully submitted,

/s/ Jeffery A. Dailey
David L. Comerford
Jeffery A. Dailey
Matthew R. Varzally
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103

April 21, 2011

Counsel for Defendant Deloitte & Touche LLP

## CERTIFICATE OF SERVICE

I, Paul T. McGurkin Jr., hereby certify that on April 21, 2011, I caused a true and correct copy of **Deloitte & Touche LLP's Opposition to Lead Plaintiffs' Motion to Clarify, Vacate, and/or Reconsider the March 28, 2011 Order Denying as Moot Lead Plaintiffs' Motion for Partial Reconsideration of the Court's September 3, 2010 Order** to be served upon the following parties by electronic mail:

| | |
|---|---|
| Clinton A. Krislov<br>Michael R. Karnuth<br>Krislov & Associates, Ltd.<br>20 N. Wacker Drive, Suite 1350<br>Chicago, IL 60606<br><br>Steven A. Schwartz<br>Kimberly Donaldson Smith<br>Chimicles & Tikellis LLP<br>361 West Lancaster Avenue<br>One Haverford Centre<br>Haverford, PA 19041<br><br>*Attorneys for Plaintiffs* | Maura E. Fay<br>Dilworth Paxson LLP<br>3200 Mellon Bank Center<br>1735 Market Street<br>Philadelphia, PA 19103<br><br>*Attorneys for Defendant*<br>*Steven R. Garfinkel* |
| Richard L. Scheff<br>Jeffrey S. Feldman<br>Montgomery McCracken Walker<br>& Rhoads LLP<br>123 S. Broad Street<br>Philadelphia, PA 19109<br><br>*Attorneys for Defendant*<br>*Michael O'Hanlon* | Daniel Segal<br>Matthew Hamermesh<br>Hangley Aronchick Segal & Pudlin<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br><br>*Attorneys for Defendant Terry Cady* |

| | |
|---|---|
| Patrick J. Loftus<br>Robert E. Kelly<br>Kelly D. Eckel<br>Duane Morris LLP<br>United Plaza<br>30 South 17th Street<br>Philadelphia, PA 19103<br><br>*Attorneys for Defendant*<br>*John P. Boyle* | William J. Taylor<br>Cozen O'Connor<br>1900 Market Street<br>Philadelphia, PA 19103<br><br>*Attorneys for Defendant*<br>*Anthony J. Turek* |
| Patricia M. Hamill<br>Vincent T. Cieslik<br>Conrad, O'Brien, Gellman & Rohn, P.C.<br>1515 Market Street<br>16th Floor<br>Philadelphia, PA 19102<br><br>*Attorneys for Defendant*<br>*Richard E. Miller* | Jeffrey M. Lindy<br>Lindy and Associates, P.C.<br>1800 JFK Boulevard, Suite 1500<br>Philadelphia, PA 19103<br><br>Peter B. Ladig<br>Bayard, P.A.<br>222 Delaware Ave., Suite 900<br>Wilmington, DE 19899<br><br>*Attorneys for Defendant*<br>*Harry T.J. Roberts* |
| John G. Harkins, Jr.<br>Marianne Consentino<br>Harkins Cunningham LP<br>2800 One Commerce Square<br>2005 Market Street<br>Philadelphia, PA 19103<br><br>William J. Schwartz<br>Rachel B. Kane<br>Celia Goldwag Barenholtz<br>Maxine Sleeper<br>Cooley Godward Kronish LLP<br>1114 Avenue of the Americas<br>New York, New York 10036<br><br>*Attorneys for Defendants*<br>*Clifford Chance LLP and*<br>*Clifford Chance US LLP* | Julian W. Friedman<br>Mary Margulis-Ohnuma<br>Stillman & Friedman, P.C.<br>425 Park Avenue<br>New York, New York 10022<br><br>Thomas Leonard<br>William Leonard<br>Richard Harris<br>Obermayer Rebmann Maxwell<br>& Hippel LLP<br>One Penn Center – 19th Floor<br>1617 JFK Boulevard<br>Philadelphia, PA 19103<br><br>*Attorneys for Defendant*<br>*Gerald Cohn* |

/s Paul T. McGurkin Jr.

# EXHIBIT 1

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

Nos. 08-8033 & 08-8045

---

IN RE: DVI, INC. SECURITIES LITIGATION

Deloitte & Touche,
Petitioner at No. 08-8033

Kenneth Grossman; Cedar Street Fund;
Cedar Street Offshore Fund,
Petitioners at No. 08-8045

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-5336
(Honorable Legrome D. Davis)

---

Argued April 20, 2010

Before: SCIRICA and AMBRO, *Circuit Judges*,
and JONES*, *District Judge*.

(Filed: March 29, 2011)

DAVID L. COMERFORD, ESQUIRE (ARGUED)
JEFFREY A. DAILEY, ESQUIRE
Akin Gump Strauss Hauer & Feld LLP
2001 Market Street
Two Commerce Square, Suite 4100
Philadelphia, Pennsylvania 19103

L. RACHEL HELYAR, ESQUIRE
JESSICA M. WEISEL, ESQUIRE
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Attorneys for Petitioner/Cross-Respondent,
Deloitte & Touche LLP

CLINTON A. KRISLOV, ESQUIRE (ARGUED)
MICHAEL R. KARNUTH, ESQUIRE (ARGUED)
ROBERT P. DEWITTE, ESQUIRE
Krislov & Associates, Ltd.

---

*The Honorable John E. Jones, III, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

common stock and Notes, respectively, demonstrate an efficient market. The District Court credited two studies offered by plaintiffs, which found that on average "only about one-third of statistically significant changes in the stock price of publicly traded companies are actually associated with identifiable news or events." *DVI*, 249 F.R.D. at 212. Here, the correlation was at least twice as high. The District Court's factual findings that 60% and 65% correlations between news releases and price changes in DVI stock and Notes weigh in favor of market efficiency were not clearly erroneous.

Deloitte also contends the market price reacted too slowly to news releases about DVI to demonstrate efficiency. The court found that although DVI's stock price sometimes took up to two days to incorporate new information, "on the vast majority of occasions the information was incorporated into the stock price on the same day." *DVI*, 249 F.R.D. at 211. Deloitte contends this is insufficient to demonstrate market efficiency.

We have addressed the speed with which information is incorporated into market price and explained that because a perfectly efficient market is not attainable, *cf.*, *Peil*, 806 F.2d at 1161 n.10 (describing the market in information as "nearly perfect"), we do not require that public information be absorbed "instantaneously," *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 269 (3d Cir. 2005). Applying this standard, we have held that a market is inefficient when a price does not decrease within four days following an alleged corrective disclosure. *See Oran*, 226 F.3d at 283 (price increased for several days following the

disclosure); *see also Merck*, 432 F.3d at 269 (same). Here, the District Court found most of the information was incorporated into the price within one day. That some information took two days to affect the price does not undermine a finding of efficiency. The District Court's finding that cause-and- effect weighs in favor of a finding of market efficiency was not clearly erroneous.

In sum, the District Court weighed efficiency factors involving the markets in which DVI's common stock and senior Notes traded. Granting weight to the listing of DVI's stock and Notes on the NYSE, and to the cause-and-effect relationships between news releases and DVI's securities' prices, the court concluded that each market was efficient. The legal standards it used to evaluate efficiency were proper, its factual findings were not clearly erroneous, and its weighing of the factors was not an abuse of discretion. Accordingly, the court did not abuse its discretion in permitting plaintiffs to invoke the fraud-on-the-market presumption of reliance.

**2.**

Deloitte urges us to adopt the view that plaintiffs must prove loss causation at the class certification stage in order to invoke the fraud-on-the-market presumption of reliance. *See Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 269 (5th Cir. 2007)*; see also Archdiocese of Milwaukee Supporting Fund v. Halliburton Co.*, 597 F.3d 330, 335 (5th Cir. 2010), *cert. granted sub nom. Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 856 (2011); *Fener v. Operating*

For the foregoing reasons, we will affirm the judgment of the District Court.

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re DVI, Inc. Securities Litigation ) | Case No. 2:03-CV-05336 (LDD) |

**DELOITTE & TOUCHE LLP'S MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION**

Lead Plaintiffs concede that this Court correctly granted Deloitte & Touche LLP's Motion for Summary Judgment on loss causation grounds with respect to Lead Plaintiffs' June 5-6 and July 16, 2003, claimed corrective disclosures. Yet, Lead Plaintiffs ask this Court to reconsider its identical treatment of the September 25, 2002 and May 13, 2003 claimed disclosures in their Motion for Partial Reconsideration (D.E. 791) (the "Motion"). Lead Plaintiffs do not take issue with the law this Court applied, nor claim that the Court failed to consider the documents actually before it. Instead, Lead Plaintiffs (1) express dissatisfaction with the result of this Court's Summary Judgment Memorandum and Order (D.E. 789-90) (the "Order"), and (2) reargue Lead Plaintiffs' previously rejected positions. Because Lead Plaintiffs do not identify any "clear error of law or fact" made by the Court or demonstrate that reconsideration is necessary to prevent "manifest injustice," Lead Plaintiffs' Motion must be denied for two principal reasons.

*First*, the Court was correct not to apply a multi-day "event window" to the September 25, 2002 purported corrective disclosure. Lead Plaintiffs did not argue in response to D&T's Motion for Summary Judgment that a multi-day window should be used. They cannot raise that argument for the first time on reconsideration. Lead Plaintiffs also attempt to distort this Court's prior class certification decision, which admittedly declined to address loss causation. Moreover, Lead Plaintiffs' new argument also contradicts their own expert, whose event study did not treat September 25 as part of a multi-day "event window."

*Second*, the Court correctly found that the September 25, 2002 and May 13, 2003 disclosures did not satisfy the Third Circuit loss causation standard. Neither disclosure revealed new information to the market that the market recognized as related to the alleged fraud.

## ARGUMENT

### I. Lead Plaintiffs' Motion Provides No Grounds for the Court to "Reconsider" its Summary Judgment Order

A motion for reconsideration "may only be granted when the plaintiff demonstrates: (1) an intervening change in controlling law; (2) new evidence that was not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Mextel, Inc. v. Air-Shields, Inc.*, Civ. A. No. 01-7308, 2005 U.S. Dist. LEXIS 8632, at *2 (E.D. Pa. Apr. 22, 2005) (Davis, J.) (denying motion).

Lead Plaintiffs admit that they cannot satisfy either of the first two elements. Therefore, Leads Plaintiffs purport to move for partial reconsideration "to correct a clear error of law or fact or to prevent manifest injustice." Motion at 2. "Where the basis of the motion for reconsideration is to correct a manifest injustice, the moving party must persuade the court that not only was the prior decision wrong, 'but that it was clearly wrong. . . .'" *Vurimindi v. Fuqua Sch. of Business*, Civ. A. No. 10-234, 2010 U.S. Dist. LEXIS 95004, at *4-5 (E.D. Pa. Sept. 13, 2010) (Pratter, J.) (denying motion) (citation omitted); *see also Ellis v. United States*, 313 F.3d 636, 648 & n.5 (1st Cir. 2002) (the "manifest injustice" "standard is difficult to achieve: a finding of manifest injustice requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong . . . [and] also requires a finding of prejudice").

"A motion for reconsideration should be granted 'sparingly.'" *Mextel*, 2005 U.S. Dist. LEXIS 8632, at *2. Such motions may not be "used as a vehicle to 'reconsider repetitive

arguments that have already been fully examined by the court.'" *Id.* at *2-3; *see also In re Plastics Additives Antitrust Litig.*, Master Docket No. 03-2038, 2006 U.S. Dist. LEXIS 98277, at *7 (E.D. Pa. Dec. 20, 2006) (Davis, J.) (denying motion) (motions are not "properly grounded on a request that a court rethink a decision it has already made") (citation omitted). Thus, a "general dissatisfaction with the court's ruling is not a valid ground for granting a motion for reconsideration." *Ride the Ducks, LLC v. Duck Boat Tours, Inc.*, Civ. A. No. 04-5595, 2005 U.S. Dist. LEXIS 8162, at *2 (E.D. Pa. Apr. 22, 2005) (Davis, J.) (denying motion).

Lead Plaintiffs have ignored these established principles by asking this Court to "reconsider repetitive arguments that have already been fully examined by the court." *Mextel, supra.* No "clear error of law or fact" is shown, nor must the Motion be granted "to prevent manifest injustice." The Motion must therefore be denied in its entirety.

## II. The Court Was Correct in Not Applying a Multi-Day "Event Window" to the September 25, 2002 Disclosure

Lead Plaintiffs argue that "[i]n ruling that there was no genuine dispute of material fact regarding loss causation for the massive price decline on September 25, 2002, the Court made a clear error of law and fact[.]" Motion at 1. They maintain that this disclosure "should have been analyzed by the Court as a unified 'event window'" in conjunction with "[t]he multiple disclosures and price declines between September 24-27[.]" *Id.* Lead Plaintiffs' argument is flawed for three reasons.

*First*, Lead Plaintiffs did not previously argue in response to D&T's Motion for Summary Judgment that this disclosure must be evaluated as part of such a multi-day "window." "[A] motion for reconsideration may not be based upon new arguments that could have been raised in [opposition to] the original motion." *Mextel*, 2005 U.S. Dist. LEXIS 8632, at *2.

*Second*, despite Lead Plaintiffs' contention that "[t]he Court *previously endorsed* analyzing loss causation pursuant to a two-day event window in connection with class certification proceedings[,]" Motion at 1 (emphasis added),[1] the Court neither "held" nor "endorsed" Lead Plaintiffs' approach. This Court did not rule on loss causation – in fact, it expressly declined to do so. *See In re DVI, Inc. Sec. Litig.*, 249 F.R.D. 196, 219 (E.D. Pa. 2008) (concluding that because "the existence of loss causation is a factual question . . . we cannot properly make this factual determination at the class certification stage"). At the class certification stage, the Court considered the separate and distinct "cause and effect" factor in analyzing market efficiency, for which Lead Plaintiffs proffered an entirely different expert. *Id.* at 210-11. Thus, Lead Plaintiffs' argument fails.

Moreover, Lead Plaintiffs cite inapposite cases that similarly scrutinized the "cause and effect" factor in the context of market efficiency at the class certification stage, not loss causation at the summary judgment or trial phase. *See Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 352 (3d Cir. 2009); *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 513 n.11 (1st Cir. 2005); *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 106-07 (S.D.N.Y. 2009). In any event, as observed in a law review article cited in *In re Xcelera.com Sec. Litig.* with respect to event windows, "[r]esearchers often use a two-day window . . . when they are uncertain whether the public announcement occurred after the close of trading. The development of online news retrieval services now enables researchers to time news releases more precisely and thus use one-day windows more often." Jonathan R. Macey *et al.*, *Lessons from Financial Economics: Materiality, Reliance, and Extending the Research of Basic v. Levinson*, 77 VA. L. REV. 1017, 1031 n.46 (August 1991). The disclosures at issue were not made after trading had closed – the

[1] *See also id.* at 4 ("[i]n analyzing Plaintiffs' expert's event study at class certification, this Court *already held* that price adjustments within two days are acceptable") (emphasis added).

September 24, 2002 *Business Wire* article was released at 1:17 p.m., and over 24 hours later the September 25, 2002 *Business Wire* article was released at 2:28 p.m. *See* Exhibit 1 attached. Lead Plaintiffs have provided no basis to conclude that the market did not or could not digest the information on the release dates.

The other cases cited by Lead Plaintiffs involve circumstances not present here and do not establish a *per se* rule that multiple day "event windows" are to be used for loss causation purposes. *See Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 664-65 (5th Cir. 2004) (rejecting district court's test for determining statistical significance of stock price declines); *United States v. Ferguson*, 584 F. Supp. 2d 447, 453 (D. Conn. 2008) (rejecting the government's proposed thirty-day window and allowing disclosures on back-to-back days *where the information was not released until well after the market closed on the first day*); *In re Adams Golf, Inc. Sec. Litig.*, Civ. A. No. 99-371, 2009 WL 1913241, at *2 n.6 (D. Del. July 1, 2009) (rejecting *Daubert* challenge to the "fundamental analysis" used by plaintiffs' expert, which did not include a statistical event study because "there did not exist a 'meaningful price history' for the company's stock") (relying on *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 94 Civ. 5587, 2000 U.S. Dist. LEXIS 3742 (S.D.N.Y. Mar. 24, 2000)); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 269-71 (3d Cir. 2005) (addressing materiality element of securities fraud claim).

*Third*, Lead Plaintiffs state without citation that "[t]he September 25 drop was the *continuation of the market's reaction* to the new fraud-related information disclosed on September 24." Motion at 6 (emphasis added). This statement contradicts Lead Plaintiffs' own purported expert who opined that, with respect to DVI's fourth quarter loss reported on September 25, "this *new information* brought the market closer to the realization that DVI was in financial distress[.]" Exhibit 2 (Excerpts from the October 1, 2008 Expert Report of Chad

Coffman). Again without citation, Lead Plaintiffs contend that "[t]he September 25 disclosures are actually part of a *4-day* event window . . . [as] [t]his series of disclosures had a snowball effect on investors, layering additional concerns on the market. . . ." Motion at 7 n.3 (emphasis added). Loss causation cannot be satisfied by Lead Plaintiffs' mere speculation. *See, e.g., In re Williams Sec. Litig. – WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (affirming summary judgment on loss causation) (jury could not be permitted to "speculate" that plaintiffs' "losses were a result of either the leakage of the truth or the revelations made in the four corrective disclosures").

## III. The September 25, 2002 and May 13, 2003 Disclosures Did Not Reveal Any Alleged Fraud

### A. The September 25, 2002 Disclosure

Lead Plaintiffs "alternatively" argue that the Court "erred in not recognizing new information released on September 25 that partially reveal[ed] the frauds." Motion at 3. Lead Plaintiffs do not argue that this Court applied an incorrect legal standard. Rather, they contest the Court's *application* of a legal standard *with which they agree* to news disclosures, the text of which *were not disputed* by the parties. Because Lead Plaintiffs challenge only the *outcome* and not the law or facts, their Motion with respect to the purported September 25 disclosure must be denied. *See In re Plastics Additives Antitrust Litig.*, 2006 U.S. Dist. LEXIS 98277, at *7 (movant may not "request that a court rethink a decision it has already made"); *Ride the Ducks*, 2005 U.S. Dist. LEXIS 8162, at *2 (a "general dissatisfaction with the court's ruling is not a valid ground for granting a motion for reconsideration"). In any event, this Court correctly dismissed on loss causation grounds Lead Plaintiffs' purported September 25, 2002 corrective disclosure, because this disclosure did not reveal at least part of the "truth" about the alleged fraud.

## CONCLUSION

For the reasons detailed above, Lead Plaintiffs' Motion for Partial Reconsideration must be denied.

Respectfully submitted,

/s/ David L. Comerford
David L. Comerford (I.D. No. 65969)
Jeffery A. Dailey (I.D. No. 85993)
Matthew R. Varzally (I.D. No. 93987)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Phone: (215) 965-1200
Facsimile: (215) 965-1210

Dated: September 30, 2010

Counsel for Defendant, Deloitte & Touche LLP

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | ) | Case No. 2:03-CV-05336 (LDD) |
| In re DVI, Inc. Securities Litigation | ) | |
| | ) | |

**DELOITTE & TOUCHE LLP'S OPPOSITION TO LEAD PLAINTIFFS' MOTION TO CLARIFY, VACATE, AND/OR RECONSIDER THE MARCH 28, 2011 ORDER DENYING AS MOOT LEAD PLAINTIFFS' MOTION FOR PARTIAL <u>RECONSIDERATION OF THE COURT'S SEPTEMBER 3, 2010 ORDER</u>**

# EXHIBIT 3 FILED UNDER SEAL