IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                  :        CIVIL ACTION
DVI, INC. SECURITIES LITIGATION        :        No. 03-5336

MEMORANDUM

Legrome D. Davis, J.                                        November 18, 2013

Plaintiff investors in Diagnostic Venutres, Inc. ("DVI")[1] sue for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F. R. § 240.10b-5.[2] Jurisdiction is the Exchange Act, 15 U.S.C. § 78aa, and federal question, 28 U.S.C. § 1331.

Both sides respectively move to preclude the other's loss causation and damages expert from testifying.[3] Lead Plaintiffs – Cedar Street Fund, Cedar Street Offshore Fund, and Kenneth Grossman – move to preclude the testimony of Defendant Deloitte & Touche LLP's expert, Neil H. Demchick (Doc. No. 876). Defendant Deloitte moves to preclude the testimony of Lead Plaintiffs' expert, Chad Coffman (Doc. No. 868). Each movant asserts that the other's expert

---

[1] In the mid-1980s, Diagnostic Ventures, Inc. was formed as a Delaware corporation. About 1986, it changed its name to DVI, Inc. By the mid-1990s, it operated as a finance company for healthcare providers through two subsidiaries – DVI Business Credit, Inc. ("DVI BC") and DVI Financial Services, Inc. ("DVI FS"). Here, "DVI" refers collectively to all of these business entities unless noted otherwise. See Fifth Am. Compl. ¶¶ 5, 25, 69-70 (Doc. No. 298); Def. Cohn's Statement of Facts ¶¶ 1-7 (Doc. No. 683-2 at 1-2).

[2] For the history and factual background of this action see: In re DVI, Inc. Sec. Litig., No. 03-5336, 2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) (Order & Mem., Doc. Nos. 789, 790 re Plaintiffs' and Defendant Deloitte & Touche LLP's respective motions to exclude the other's loss causation expert, and Deloitte's motion for summary judgment); id., 249 F.R.D. 196 (E.D. Pa. 2008), aff'd, 639 F.3d 623 (3d Cir. 2011) (Apr. 29, 2008 Order & Mem., Doc. No. 609 re class certification); id., 2005 WL 1307959 (E.D. Pa. May 31, 2005) (Order & Mem., Doc. No. 181 re dismissal motions).

[3] The parties' submissions: Lead Plaintiffs' "Motion to Strike and Exclude Deloitte & Touche LLP's Purported Causation and Damages Expert Neil H. Demchick" (Doc. No. 876), Mem. of Law ("Pls. Br.," Doc. No. 880) with Exs. 1-20 (Doc. No. 881), and Reply Br. (Doc. No. 895); Deloitte's Resp. with Exs. 1-6 (Doc. No. 889). Defendant Deloitte & Touche LLP's "Motion to Exclude From Trial Any Testimony From Lead Plaintiffs' Purported Expert Chad Coffman" (Doc. No. 868), Mem. of Law with Exs. A-E ("Def. Br.," Doc. No. 870), and Reply Br. (Doc. No. 885); Lead Plaintiffs' Resp. with Exs. 1-4 (Doc. No. 873).

offers opinions that are inadmissible under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). In addition, Lead Plaintiffs assert that Deloitte's expert, Demchick, does not possess the requisite qualifications to testify on loss causation and damages. See Fed. R. Evid. 702.[4] Several procedural obstacles to his testimony are proposed as well.

The motion to preclude Demchick's testimony will be denied. The asserted deficiencies relate entirely to the weight to be given by the jury to his qualifications and opinions. He will be permitted to testify at trial as an expert on loss causation and damages consistently with the opinions set forth in his May 3, 2013 report. (Demchick Rep., Def. Ex. 3, Doc. No. 889).

A ruling on the motion to preclude the testimony of Coffman will be reserved, and the parties will be permitted to submit additional briefing on the specific issues set forth below.

I.  PROCEDURAL AND FACTUAL BACKGROUND

Lead Plaintiffs' expert, Chad Coffman, submitted an initial report positing two theories for determining loss causation and damages in this case – an insolvency approach and an event study. Coffman Rep., dated Oct. 1, 2008, Pls. Resp., Ex. 1 (Doc. No. 873-1). In response, another of Defendant Deloitte's experts, Kenneth Lehn, Ph.D., submitted a report on loss causation and damages. He offers opinions on whether Plaintiffs were damaged by the alleged acts or omissions of Deloitte, and his own event study. Lehn Rep., dated Nov. 17, 2008, Def. Resp. to Pls. Mot. to Exclude Lehn, Ex. A (Doc. No. 739). Coffman rebutted Lehn's opinions. Coffman Rebuttal Rep., dated Dec. 17, 2008, Pls. Resp., Ex. 2 (Doc. No. 873-2).

---

[4] "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

2

On April 30, 2009, Deloitte moved to exclude Coffman's initial reports and testimony (Doc. No. 686, 690). On July 6, 2009, Lead Plaintiffs moved to exclude Lehn's report and testimony (Doc. No. 702). On September 3, 2010, both motions were decided. In re DVI, Inc. Sec. Litig., No. 03-5336, 2010 WL 3522090, at *7-14 (E.D. Pa. Sept. 3, 2010) (Order & Mem., Doc. Nos. 789, 790). Coffman's insolvency theory conflicted with Supreme Court and Third Circuit precedent on loss causation. It was also ruled that the insolvency theory was unreliable and unfit, and therefore inadmissible. Id., 2010 WL 3522090, at *9-12. It was further ruled that both Coffman's and Lehn's event studies were reliable and admissible. Id., 2010 WL 3522090, at *12-14. However, portions of those event studies were excluded as irrelevant: "to the extent that Mr. Coffman and Dr. Lehn opine on the revelations that occurred on September 25, 2002, May 13, 2003, June 5-6, 2003, and July 16, 2003, their opinions will not assist the jury in resolving any factual dispute, as the disclosures on those days are not corrective disclosures as a matter of law." Id., 2010 WL 3522090, at *14.

Deloitte timely disclosed Terry L. Musika, CPA, as an expert witness and produced his report. Musika Rep., dated Nov. 17, 2008, Def. Ex. 5 (Doc. No. 889). Deloitte's counsel timely notified the Court that Mr. Musika passed away on December 18, 2012. Counsel's letter, dated Jan. 11, 2013, Def. Ex. 1 (Doc. No. 889). Deloitte was permitted to substitute another expert. See Feb. 19, 2013 Order-Mem. (Doc. No. 862); id. at 1 ("The testimony of the expert so designated shall be limited to the topics upon which Mr. Musika previously opined.").

On May 3, 2013, Deloitte timely produced the report of its newly designated expert, Neil H. Demchick. Demchick Rep., dated May 3, 2013, Def. Ex. 3 (Doc. No. 889). In response to Demchick's opinions, Lead Plaintiffs timely produced Coffman's rebuttal report. Coffman

3

Rebuttal Rep., dated June 24, 2013, Pls. Ex. 20 (Doc. No. 881) & Ex. 3 (Doc. No. 873-3). On August 8-9, 2013, the parties deposed Demchick. Deloitte chose not to depose Coffman as to his rebuttal of Demchick's opinions.

On August 23, 2013, Deloitte once again moved to preclude Coffman's trial testimony. Def. Mot. (Doc. No. 868). On October 2, 2013, Lead Plaintiffs in turn moved to preclude Demchick's testimony (Doc. No. 876). These pending motions will now be ruled on.

III. DISCUSSION

A. Lead Plaintiffs' Motion to Exclude Deloitte's Expert, Neil H. Demchick

Lead Plaintiffs contend that Neil H. Demchick's testimony should be precluded because Deloitte unduly delayed in notifying the Court that its former expert, Terry L. Musika, was unavailable. Pls. Br. at 1, 8-9 (Doc. No. 880). They say Deloitte knew as of September, 2012, that Musika was ill and "was no longer available to testify in this case." Id. at 9. This assertion is based on a misreading of Demchick's deposition testimony. See Aug. 8, 2013 Demchick Tr., 277:1-279:5 (he was unsure of the pertinent dates), Def. Ex. 2 (Doc. No. 889). Nothing in the record suggests that Deloitte was tardy, as was previously ruled. See Feb. 19, 2013 Order-Mem. (Doc. No. 862). No evidence or good reasons have been presented warranting reconsideration of that decision.

Lead Plaintiffs say that Demchick's "credentials are deficient." Pls. Br. at 4 (Doc. No. 880). They contend that he is not qualified to provide expert testimony on loss causation and damages. In part this so, they say, because he has not previously served as an expert in a private securities fraud case. In their view, his credibility is flawed and his professional abilities are inadequate. This position is also without merit.

Federal Rule of Evidence 702, which governs the admissibility of expert opinion testimony, has three major requirements:

> (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact.

Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). These requirements have been summarized as "a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994) (citing Daubert, supra)). Furthermore, the Rules of Evidence "embody a strong preference for admitting any evidence that may assist the trier of fact," and take a "liberal policy of admissibility" with respect to expert testimony. Pineda, 520 F.3d at 243 (citing Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

"Qualification refers to the requirement that the witness possess specialized expertise." Schneider, 320 F.3d at 404. This criterion is liberally interpreted – a "broad range of knowledge, skills, and training qualify an expert." Id. (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d at 741-43). The liberal approach "extends to the substantive as well as the formal qualifications of experts." Pineda, 520 F.3d at 244. A witness may be competent to testify as an expert even though, in the opponent's view, he may not be the best qualified. "Who is 'best' qualified is a matter of weight upon which reasonable jurors may disagree." Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 782 (3d Cir. 1996).

Demchick has the requisite "technical, or other specialized" expertise to testify as an expert on loss causation and damages in this case. Fed. R. Evid. 702. See, e.g., City of Ann Arbor Emp. Ret. Sys. v. Sunoco Prods. Co., 827 F. Supp. 2d 559, 571-72 (D.S.C. 2011) (witness

5

with comparable qualifications allowed to testify, for the first time, as an expert on loss causation and damages in a private securities fraud action).[5] Lead Plaintiffs' objections to Demchick's qualifications are matters of weight for the jury to resolve.

As another ground for exclusion, Lead Plaintiffs say that Demchick did not disclose previous "cases where his decisions were rejected." Pls. Br. at 1, 4-7, 10 (Doc. No. 880). These "selective omissions," in their view, "do not appear innocent or benign, and therefore merit exclusion of his testimony on that basis alone." Id. at 10. This is an unfounded position.

Our Court of Appeals cautions that "exclusion of critical evidence is an 'extreme' sanction," and applies five factors in deciding whether exclusion of evidence as a discovery sanction constitutes an abuse of discretion. ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 297 (3d Cir. 2012), cert. denied, 133 S. Ct. 2025 (U.S. 2013) (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977), overruled on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985)). These "Pennypack" factors, which guide the inquiry here, are:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.

---

[5] Neil H. Demchick has 29 years of professional experience: He is a Certified Public Accountant. He received a B.A. in economics from the Wharton School of the University of Pennsylvania and a M.A. in finance from the New York University Graduate School of Business Administration. Demchick Rep., Ex. A at 1-2, Def. Ex. 3 (Doc. No. 889). He is currently a Managing Director of Invotex Company "directly responsible for performance and oversight of client engagements primarily in the areas of restructuring and insolvency, litigation services, and valuation." Id. During his career, he has performed significant work within the fields of accounting, economics, finance, and valuation, including analyses of "liability, causation and damages." Id. He has substantial experience with auditing, accounting, loan loss reserves, the value and collectability of loans, and litigation related to bankruptcy and restructuring. Aug. 8, 2013 Demchick Tr., 27:2-28:18, 29:15-30:1, 44:15-45:18, 50:8-22, 51:1-9, Def. Ex. 2 (Doc. No. 889).

ZF Meritor, 696 F.3d at 297-98 (quoting Pennypack, 559 F.2d at 904-05).

Weighing the Pennypacker factors here, each favors the admission of Demchick's testimony. There is no evidence of bad faith on the part of Deloitte or its expert, Demchick. Allowing Demchick to testify at trial will not cause any excessive delay or undue disruption in the progress of this case. It was previously decided that the importance of an expert's live testimony justified postponing trial to permit designation of a substitute expert as well as discovery and the parties' motions in regard to the substitute expert's opinions:

> Issues of causation and damages will be the subject of expert testimony by both parties at trial. The opportunity for cross-examination and observation of the demeanor of witnesses as to those issues are of paramount importance here. The jury should be informed by the direct testimony of each side's experts as well.

Feb. 19, 2013 Order-Mem. (Doc. No. 862 at 2-3). The parties were granted a number of extensions of time in order to accomplish these critical goals. Moreover, the record establishes that the asserted infractions of mandatory rules governing expert discovery did not cause Lead Plaintiffs any substantial prejudice or unfair surprise. And they had a full and fair opportunity through discovery and motion practice to cure any perceived prejudice.

Lead Plaintiffs cite five unrelated lawsuits in which Demchick previously served as an expert. Pls. Br. at 4-7 (Doc. No. 880). Various rulings in those cases are marshalled in an apparent effort to undermine Demchick's credibility and expertise. Some rulings are inaccurately portrayed as well. Id. Importantly, it is not adequately explained why the rulings warrant exclusion of Demchick's opinions. In each case, Demchick proffered opinions that were related to markedly different financial transactions and legal issues than those presented here. None was a private securities fraud action. Here, Demchick is not opining on topics comparable to those at

7

issue in the cited cases. And it is of no import how other courts ruled in regard to an expert's opinions that are immaterial and irrelevant to the questions presented in this case.

Lead Plaintiffs complain that Demchick did not list on his CV services as an expert in two of the five cited lawsuits – <u>Ballarini</u> and <u>Gateway</u>.[6] Pls. Br. at 6, 9 (Doc. No. 880). They say this warrants excluding his testimony. <u>Id.</u> at 9. Yet again, the asserted shortcoming is one of no import. An expert must disclose "all other cases in which, during the previous 4 years, the witness testified as an expert at trial or deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). Deloitte maintains that Demchick did not testify as an expert in <u>Ballarini</u> and <u>Gateway</u> – either at trial or at deposition. Def. Resp. at 8 (Doc. No. 889). And nothing in the record suggests otherwise. That Deloitte and its expert, Demchick, violated mandatory rules governing expert discovery is unfounded. Demchick was not required to disclose his services in those cases.

Even viewing Demchick's oversight as to <u>Ballarini</u> and <u>Gateway</u> as being inconsistent with the spirit of Rule 26, the infraction would be harmless, warranting no sanctions. <u>See</u> Fed. R. Civ. P. 37(c).[7] It is difficult to envision how Lead Plaintiffs might be prejudiced from an expert's failure to disclose his services in two lawsuits that concerned facts and legal issues that have no relevance to the questions presented here. Furthermore, as Lead Plaintiffs acknowledge, they questioned Demchick at deposition about those lawsuits. Pls. Br. at 6 (Doc. No. 880); Aug. 8,

---

[6] Lead Plaintiffs cite: <u>Ballarini, D.O. v. Ergency Assoc., LLC</u>, No. 2010-SU-02446-07, 2011 WL 7986571 (Pa. Ct. Com. Pl., York Cnty. Dec. 16, 2011), Pls. Ex. 8 (Doc. No. 881) and <u>Gateway Sys., Inc. v. Chesapeake Sys. Solutions, Inc.</u>, No. 10 C 2276 (N.D. Ill. 2011); Pls. Ex. 11 (Doc. No. 881) (Notification of Docket Entry); <u>see id.</u>, No. 10 C 2276, 2011 WL 1312168, at *3 (N.D. Ill. 2011).

[7] Imposition of sanctions for a failure to disclose in violation Rule 26(a) is governed by Rule 37(c), which provides in part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

8

2013 Demchick Tr., at 66:9-67:23, Pls. Ex. 4 (Doc. No. 881). See Sheehan v. Delaware & Hudson Ry. Co., Inc., 439 F. App'x 130, 133 (3d Cir. 2011) (district court did not abuse its discretion in finding neither prejudice nor surprise where litigant had the opportunity to cure any prejudice by deposing the witness whose testimony was challenged).

Another ground for exclusion is proposed: Lead Plaintiffs maintain that Demchick's report raises new issues beyond the topics upon which Musika previously opined. Pls. Br. at 1, 3-4, 9-12 (Doc. No. 880). They say this violates the limitation placed on the scope of Demchick's testimony by the February 19, 2013 Order-Mem. (Doc. No. 862). Id. This is not correct. That decision did not forbid newly articulated facts, issues, principles, theories, opinions, or conclusions; only expert opinion on a materially different topic or subject matter was prohibited. Demchick's opinions substantially conform to the same topics upon which Musika opined – determination of loss causation and damages in a private securities fraud action.

Nonetheless, Lead Plaintiffs propose that "[a]ll of the new issues raised by Mr. Demchick should be excluded" – and cite the greater portion of Demchick's substantive opinions for excision. Pls. Br. at 11-12 (Doc. No. 880). Most of the cited opinions are not so new, having been presented in previous filings in a more or less specific form, with more or less comprehensive statement. Inasmuch as Lead Plaintiffs were afforded discovery of Demchick's opinions, they had the ability to cure any surprise or prejudice pertaining to those opinions that they viewed as novel or unfamiliar.

Lead Plaintiffs also say that under Rule 702 and Daubert, "the substance" of Demchick's opinions should be precluded. Pls. Br. at 12 (Doc. No. 880). His opinions are critiqued at length and said to be inadmissible. Id. at 12-25 (Doc. No. 880). However, a careful review of the

9

record discloses that each challenged opinion is based on "good grounds" – that is, sufficient facts or data in this case and reliable principles and methods. Daubert, 509 U.S. at 590; see Fed. R. Evid. 702 (standard of evidentiary reliability). Lead Plaintiffs' objections are not well taken, meriting a short discussion here.

Rule 702 and Daubert require a district court to ensure that "expert testimony is not only relevant, but reliable." ZF Meritor, 696 F.3d at 291. As our Court of Appeals has made clear, "'the reliability analysis required [by Daubert] applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion.'" Id. (alteration in original) (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 155 (3d Cir. 1999)). But the standard for determining reliability "is not that high." In re Paoli R.R. Yard PCB Litig., 35 F.3d at 745. Proponents of expert testimony do not "have to prove their case twice – they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." Id. at 744 (emphasis in original) ("evidentiary requirement of reliability is lower than the merits standard of correctness"); accord Pure Earth, Inc. v. Call, No. 12-2130, --- F. App'x ----, 2013 WL 3776218, at *2 (3d Cir. July 19, 2013).

Lead Plaintiffs' basic position as to admissibility is that "Demchick's testimony should be excluded because it is unsupported by the facts and is not grounded in accepted standards." Pls. Br. at 13, 19 (Doc. No. 880). This too is not a tenable position.

Demchick's opinions are based in large part on requirements set by the Supreme Court, Congress, and our Court of Appeals for proof of loss causation and damages. See, e.g., Dura

Pharm., Inc. v. Broudo, 544 U.S. 336, 342-43 (2005);[8] 15 U.S.C. § 78u-4(b)(4) ("plaintiff shall have the burden of proving that the act or omission of the defendant . . . caused the loss for which plaintiff seeks to recover damages") (emphasis added)); McCabe v. Ernst & Young, LLP, 494 F.3d 418, 425-26 (3d Cir. 2007) ("must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff") (citing Semerenko v. Cendant Corp., 223 F.3d 165, 184-85, 187 (3d Cir. 2000) and EP MedSystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 884 (3d Cir. 2000)); Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 301 (3d Cir. 1991) (generally, expert testimony is required to establish "both the fact of damage and the appropriate method of calculation"). Accord Pure Earth, 2013 WL 3776218, at *3 ("The loss causation inquiry asks 'whether the misrepresentation or omission proximately caused the economic loss.'") (quoting McCabe, 494 F.3d at 425-26)). See Demchick Rep. ¶¶ 26-28 & nn. 22-25, Def. Ex. 3 (Doc. No. 889); Aug. 8, 2013 Demchick Tr., 208:4-215:8, 258:11-259:17, Def. Ex. 2 (Doc. No. 889).

Demchick's opinions are consistent with this Court's previous rulings. See, e.g., In re DVI, Inc. Sec. Litig., No. 03-5336, 2010 WL 3522090, at *13 (expert opinion evidence is required to "'distinguish between fraud-related and non-fraud related influences of the stock's

---

[8] The Supreme Court recognized that a "tangle of factors" affects the price of securities and, therefore, determinations of loss causation and damages: "Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss. If the purchaser sells later after the truth makes its way into the marketplace, an initially inflated purchase price *might* mean a later loss. But that is far from inevitably so. When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price. . . . Other things being equal, the longer the time between purchase and sale, the more likely that this is so, *i.e.*, the more likely that other factors caused the loss." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342-43 (2005).

price behavior'" (quoting In re Imperial Credit Indus., Inc., Sec. Litig., 252 F. Supp. 2d 1005, 1014-15 (C.D. Cal. 2003)); WM High Yield Fund v. O'Hanlon, No. 04-3423, 2013 WL 3230667, at *8-9, 11-13,15-17 (E.D. Pa. June 27, 2013) (proof of loss causation and damages requires disaggregation of non-fraud related influences as well as allocation of responsiblity among multiple, potentially liable defendants). That Lead Plaintiffs may disagree in some respects with those rulings does not show that Demchick's opinions are inadmissible.

Lead Plaintiffs say that Demchick's opinions are "unsupported" and "ignore and are inconsistent with undisputed facts." Pls. Br. at 1, 13 (Doc. No. 880). This criticism is oft repeated in regard to most of the challenged opinions. But Demchick's opinions are supported by record evidence, just not the evidence that Lead Plaintiffs proffer to show Deloitte should be held liable for securities fraud. Lead Plaintiffs simply disagree with Demchick's competing evaluation of the record and find the facts supporting his evaluation to be unpersuasive. However, Demchick's opinion are within "the range where experts might reasonably differ," and the jury, not the trial court or Lead Plaintiffs, must be the one to decide among conflicting views of different experts. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 153 (1999).

Lead Plaintiffs disclaim the correctness of Demchick's opinions, but do not present a cogent challenge to the methods that he used to reach his conclusions. Essentially, they say Demchick did not do enough analysis or a preferred kind of analysis. In their view, he should have explained in more depth and detail, and should have provided an independent assessment of certain issues that are said to be crucially important. For example, it is suggested that he should have performed his own analysis of the investors' losses and DVI's loan loss reserves. And he should have done his own event study. See, e.g., Pls. Br. at 12-13, 21, 22-23 (Doc. No. 880).

12

However, there is no requirement that Demchick have done so. Instead, he evaluated and critiqued Coffman's opinions on loss causation and damages. This is permissible if executed in conformity with Rule 702's requirements for evidentiary reliability. See, e.g., City of Ann Arbor, 827 F. Supp. 2d at 571-72 (Daubert did not require exclusion of an expert's critique of an event study, even though the expert did not perform his own event study).

Our Court of Appeals instructs that the "ultimate touchstone" for determining the reliability of proffered expert opinion

> is helpfulness to the trier of fact, and . . . helpfulness turns on whether the expert's technique or principle is sufficiently reliable so that it will aid the jury in reaching accurate results.

In re Paoli R.R. Yard PCB Litig., 35 F.3d at 744 (internal quaotation marks, citations, and alteration omitted). Here, the record establishes that Demchick's testimony will aid the jury in assessing whether Deloitte's acts or omissions were a substantial factor in proximately causing declines in the price of DVI's securities, thereby creating actual economic losses for Plaintiffs.

Inasmuch as expert wtinesses may express their opinions on matters about which they have no firsthand knowledge, Fed. R. Evid. 703, and an expert's testimony may be given substantial weight by the jury because of the expert's status alone, a trial judge must be vigilant in exercising a "gatekeeper" role. Daubert, 509 U.S. at 595; Kumho Tire Co., 526 U.S. at 148. Mindful of that duty, it is nonetheless well recognized that:

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

Daubert, 509 U.S. at 596. Additionally, in the event a scintilla of evidence is adduced to support the position of an expert for either side, and it is concluded that the evidence is insufficient to

13

allow a reasonable juror to find that the position more likely than not is true, a judgment could be directed. See id. (citing Fed. R. Civ. P. 50(a)). These procedural safeguards, rather than exclusion of an expert's testimony that meets the evidentiary requirements for admission under Rule 702, are appropriate here.

B.     Deloitte's' Motion to Exclude Lead Plaintiffs' Expert, Chad Coffman

A ruling on Deloitte's motion to preclude the trial testimony of Lead Plaintiffs' expert, Chad Coffman, will be reserved. Our Court of Appeals has not recently considered some questions that are presented in that motion – one central question being, whether a private securities fraud plaintiff must prove the proportion of fault attributable to each of multiple, potentially responsible defendants? Importantly, previous rulings in this case also did not fully consider those questions. See In re DVI, Inc., Sec. Litig., No. 03-5336, 2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) (deciding the parties' initial, respective motions to exclude the other's loss causation and damages expert, and Deloitte's motion for summary judgment).

Inasmuch as the instant motion presents a query as to how our Court of Appeals would rule, and in light of recent soundly-reasoned but conflicting rulings from other jurisdictions, the parties will be permitted to submit additional briefing as to the following questions:

1.     As part of the burden of proving the element of loss causation as to each defendant in a private securities fraud case, must the plaintiff disaggregate – that is, identify and account for – negative information and events affecting the price of the issuer's securities, but which are not related to the fraud allegedly committed by a particular defendant ?

2.     If proof of loss causation is based on a materialization of risk theory, must the plaintiff also disaggregate non-fraud related, negative information and events?

3. In proof of loss causation, must the plaintiff allocate the alleged inflation (or deflation) in the issuer's securities among other potentially liable defendants, and apportion or attribute to a particular defendant the inflation (or deflation) that allegedly results from that defendant's acts or omissions?

4. In the proof of actual economic damages, must the plaintiff allocate losses in the value of the issuer's securities among other potentially liable defendants, and apportion or attribute to a particular defendant the losses that allegedly result from that defendant's acts or omissions?

5. Under the Private Securities Litigation Reform Act of 1995 (PSLRA), 15. U.S.C. § 78u-4(b)(4), which party bears the burden of proving proportionate fault?

In addition, the parties are cautioned that the Court is not presently inclined to further delay trial in order to accommodate the production of supplemental expert reports. See Pls. Br. at 19 n.10 (Doc. No. 880); Pls. Br. at 4, 24, 32, 33 (Doc. No. 873) (requests to supplement); cf Def. Br. at 3-4, 11-12, 19-20 (Doc. No. 870). Furthermore: "'A trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result.'" Sheehan, 439 F. App'x at 133 (quoting Swietlowich v. Bucks Cnty., 610 F.2d 1157, 1164 (3d Cir. 1979) and citing Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)). Here, a determination as to whether previous rulings in this case should be reconsidered, on the Court's own motion, awaits consideration of the parties' permitted briefing.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.