IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                        :            CIVIL ACTION
DVI, INC. SECURITIES LITIGATION   :            No. 03-5336

MEMORANDUM

Legrome D. Davis, J.                                   September 15, 2014

Plaintiff investors in Diagnostic Ventures, Inc. ("DVI")[1] sue for violations of Section

10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F. R. §

240.10b-5.[2]  Jurisdiction is the Exchange Act, 15 U.S.C. § 78aa, and federal question, 28 U.S.C.

§ 1331.

Both sides respectively moved twice to preclude the other's loss causation and damages

expert from testifying.[3]  On the second round of motions in 2013, Lead Plaintiffs – Cedar Street

Fund, Cedar Street Offshore Fund, and Kenneth Grossman – moved to preclude the testimony of

Defendant Deloitte & Touche LLP's expert, Neil H. Demchick (Doc. No. 876).  Defendant

Deloitte then moved to preclude the testimony of Lead Plaintiffs' expert, Chad Coffman (Doc.

---

[1]  In the mid-1980s, Diagnostic Ventures, Inc. was formed as a Delaware corporation.  About 1986, it changed its name to DVI, Inc.  By the mid-1990s, it operated as a finance company for healthcare providers through two subsidiaries – DVI Business Credit, Inc. ("DVI BC") and DVI Financial Services, Inc. ("DVI FS").  Here, "DVI" refers collectively to all of these business entities unless noted otherwise.  See Fifth Am. Compl. ¶¶ 5, 25, 69-70 (Doc. No. 298); Def. Cohn's Statement of Facts ¶¶ 1-7 (Doc. No. 683-2 at 1-2).

[2]  For the history and factual background of this action see:  In re DVI, Inc. Sec. Litig., No. 03-5336, 2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) (Order & Mem., Doc. Nos. 789, 790 re Plaintiffs' and Defendant Deloitte & Touche LLP's respective motions to exclude the other's loss causation expert, and Deloitte's motion for summary judgment); id., 249 F.R.D. 196 (E.D. Pa. 2008), aff'd, 639 F.3d 623 (3d Cir. 2011) (Order & Mem., Doc. No. 609 re class certification); id., 2005 WL 1307959 (E.D. Pa. May 31, 2005) (Order & Mem., Doc. No. 181 re dismissal motions filed by numerous defendants).

[3]  The parties' submissions:  Lead Plaintiffs' "Motion to Strike and Exclude Deloitte & Touche LLP's Purported Causation and Damages Expert Neil H. Demchick" (Doc. No. 876), Mem. of Law (Doc. No. 880) with Exs. 1-20 (Doc. No. 881), and Reply Br. (Doc. No. 895); Deloitte's Resp. with Exs. 1-6 (Doc. No. 889).  Defendant Deloitte's "Motion to Exclude From Trial Any Testimony From Lead Plaintiffs' Purported Expert Chad Coffman" (Doc. No. 868), Mem. of Law with Exs. A-E (Doc. No. 870), and Reply Br. (Doc. No. 885); Lead Plaintiffs' Resp. with Exs. 1-4 (Doc. No. 873).

No. 868).  Each movant asserted that the other's expert offers opinions that are inadmissible under Federal Rule of Evidence 702[4] and <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), among other obstacles to the proffered opinions.

By Order dated November 18, 2013 (Doc. No. 897), the motion to preclude Demchick's opinion testimony was denied.  It was ruled that the asserted shortcomings related entirely to the weight to be given by the jury to his qualifications and opinions, and he would be permitted to testify at trial as an expert on loss causation and damages consistently with the opinions set forth in his May 3, 2013 report.  A ruling on the motion to preclude the opinion testimony of Coffman was reserved, and the parties were permitted to submit additional briefing on specific issues regarding proof of loss causation and damages.  <u>See</u> Mem., dated Nov. 18, 2013 (Doc. No. 896). The parties did so.  <u>See</u> Lead Pls.' Br. (Doc. No. 898); Def. Br. (Doc. No. 899).

In essence, Deloitte's motion asserts that Coffman's opinions are inadmissible because they do not "disaggregate certain alleged non-fraud-related negative information about DVI" from the disclosures identified in his reports as being partial corrections of fraudulent inflation in the price of DVI's securities.  Def. Mem. of Law at 1-2 (Doc. No. 870).  Also, it is asserted that Coffman "admits . . . he made no effort to disaggregate among the various defendants named in this case their alleged responsibility for the price declines in DVI securities."  <u>Id.</u>  Furthermore, it is asserted that Coffman's opinions do not satisfy "the more rigorous showing required" to

---

[4]  "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

establish actual damages.  Id.  The reports of Deloitte's experts, Demchick and Terry L. Musika, CPA, identify these problems in Coffman's opinions.  Id.

Lead Plaintiffs oppose the motion to preclude Coffman's testimony on several grounds. Pls. Resp. (Doc. No. 873).  Their principal contention is that Coffman's opinions rest upon "good grounds" and "should be tested by the adversary process" at trial.  Pls. Mem. of Law at 14 (Doc. No. 873).  And "disaggregation and apportionment among defendants . . . should be decided by a jury."  Id. at 15, 17 (jury should decide the proper interpretation of the event disclosures).

I.       PROCEDURAL AND FACTUAL BACKGROUND

A.       Procedural History

Lead Plaintiffs' expert, Chad Coffman, submitted an initial report positing two theories for determining loss causation and damages in this case – an insolvency approach and an event study.  Coffman Rep., dated Oct. 1, 2008, Pls. Resp., Ex. 1 (Doc. No. 873-1).  In response, another of Deloitte's experts, Kenneth Lehn, Ph.D., submitted his report on loss causation and damages.  Lehn prepared his own event study and offers opinions on whether Plaintiffs were damaged by the alleged acts or omissions of Deloitte.  Lehn Rep., dated Nov. 17, 2008, Def. Resp. to Pls. Mot. to Exclude Lehn, Ex. A (Doc. No. 739).  Coffman rebutted Lehn's opinions. Coffman Rebuttal Rep., dated Dec. 17, 2008, Pls. Resp., Ex. 2 (Doc. No. 873-2).

On April 30, 2009, Deloitte moved to exclude Coffman's initial reports and testimony (Doc. No. 686, 690).  On July 6, 2009, Lead Plaintiffs moved to exclude Lehn's report and testimony (Doc. No. 702).  On September 3, 2010, both motions were decided.  In re DVI, Inc. Sec. Litig., No. 03-5336, 2010 WL 3522090, at *7-14 (E.D. Pa. Sept. 3, 2010) (Order & Mem., Doc. Nos. 789, 790).  Coffman's insolvency theory was found to be in conflict with Supreme

3

Court and Third Circuit precedent on loss causation.  It was also ruled that the theory was unreliable and unfit, and therefore inadmissible.  Id., 2010 WL 3522090, at *9-12.  It was further ruled that both Coffman's and Lehn's event studies were reliable and admissible.  Id., 2010 WL 3522090, at *12-14.  However, portions of those event studies were excluded as irrelevant:  "to the extent that Mr. Coffman and Dr. Lehn opine on the revelations that occurred on September 25, 2002, May 13, 2003, June 5-6, 2003, and July 16, 2003, their opinions will not assist the jury in resolving any factual dispute, as the disclosures on those days are not corrective disclosures as a matter of law."  Id., 2010 WL 3522090, at *14.

Deloitte timely disclosed Terry L. Musika, CPA, as an expert witness and produced his report.  Musika Rep., dated Nov. 17, 2008, Def. Mem. of Law, Ex. B (Doc. No. 870).  Deloitte's counsel timely  notified the Court that Mr. Musika passed away on December 18, 2012.  Counsel's letter, dated Jan. 11, 2013, Def. Ex. 1 (Doc. No. 889).  Deloitte was permitted to substitute another expert.  See Feb. 19, 2013 Order-Mem. (Doc. No. 862); id. at 1 ("The testimony of the expert so designated shall be limited to the topics upon which Mr. Musika previously opined.").

On May 3, 2013, Deloitte timely produced the report of its newly designated expert, Neil H. Demchick.  Demchick Rep., dated May 3, 2013, Def. Mem. of Law, Ex. A (Doc. No. 870) (excerpts); Def. Ex. 3(Doc. No. 889) (full report).  In response to Demchick's opinions, Lead Plaintiffs timely produced Coffman's rebuttal report.  Coffman Rebuttal Rep., dated June 24, 2013, Pls. Resp., Ex. 3 (Doc. No. 873-3).

On August 23, 2013, Deloitte again moved to preclude Coffman's trial testimony.  Def. Mot. (Doc. No. 868).  On October 2, 2013, Lead Plaintiffs, in turn, moved to preclude

Demchick's opinions (Doc. No. 876).  As mentioned above, Lead Plaintiffs' motion to preclude

Demchick's opinions was denied, and a ruling on Deloitte's motion to preclude Coffman's

opinions was reserved (Order, dated Nov. 18, 2013, Doc. No. 897).  That motion is decided here.

      B.     <u>Deloitte's Criticisms of Coffman's Reports</u>

Coffman's rebuttal of Demchick's testimony is faulted for being "purely subjective" –

that is, for being "unaccompanied by any reliable methodology or analysis, concerning his failure

to disaggregate certain information."  Def. Mem. of Law at 3-4 (Doc. No. 870).  In Deloitte's

view, Coffman erred by basing his conclusions on certain assumptions that are not established on

the record.  <u>Id.</u> at 4, 19-20 (citing portions of Coffman's reports, which are quoted below).

Specifically, Deloitte challenges Coffman's acknowledgment of the following

assumptions made in his reports:

> I have been asked by counsel for Plaintiffs in this matter to quantify the damages
> suffered by the Class under the assumption that Defendants are found liable in this
> matter under the Securities Exchange Act of 1934.

Coffman Rep, dated Oct. 1, 2008, ¶ 2, Pls. Resp., Ex. 1 (Doc. No. 873-1).  Coffman explains that

his opinions are based on a fundamental assumption of fact – as directed by counsel in defining

the scope of his retention as an expert – that Defendants together are "collectively" or jointly

responsible for all of the asserted fraudulent inflation in the price of DVI's securities:

> Mr. Musika also suggests that I do not consider the "impact of multiple parties" and
> that I "fail to analyze the impact of numerous defendants in this matter."  I was asked
> by counsel to calculate the total damages to class members as a result of the alleged
> fraud . . . .  My analysis is based on the presumption that Defendants are collectively
> responsible for the inflation I measure in the prices of DVI's common stock and
> Senior Notes.  It is unnecessary to form an opinion regarding the relative contribution
> of any particular Defendant to the fraud, inflation or damages to answer the question
> I have been asked.

Coffman Rebuttal Rep., dated Dec. 17, 2008, ¶ 70, Pls. Resp., Ex. 2 (Doc. No. 873-2).

Most recently, in 2013, Coffman reiterated and again acknowledged his previous assumptions of the joint liability of all Defendants named in this case for private securities fraud:

> I was asked to quantify the total amount of inflation in DVI securities as a result of Plaintiffs' allegations, not just those resulting from D&T specific acts.  Moreover, I was not asked to apportion the inflation by Defendant, nor does it make sense to do so. . . . [I]f D&T is found liable, it would be reasonable to conclude that there is but-for and foreseeable causation between D&T's misstatements and all of the artificial inflation after D&T's alleged misstatements and omissions.

Coffman Rebuttal Rep. (re: Demchick's opinions), dated June 24, 2013, ¶ 7(iv), Pls. Resp., Ex. 3 (Doc. No. 873-3).  See also id., ¶ 7(vii) (incorporating his previous rebuttal of Musika's opinions quoted above as to "other potentially responsible parties or other sources of recovery"); id., ¶ 35 (reiterating the statements in his earlier reports quoted above); id., ¶ 37 ("It was therefore outside my scope to partition inflation and damages among the individual Defendants, including D&T"). And Coffman once more acknowledged that his opinions are grounded on the fundamental assumption that Deloitte is jointly liable for misrepresentations in DVI's financial reports and Deloitte's clean audit reports regarding those financial statements:

> Mr. Demchick asserts that I do not consider that there are multiple defendants.  My analysis is based on the presumption that Defendants are collectively responsible for the inflation I measure in the prices of DVI's common stock and Senior Notes.  I was asked by counsel to calculate total damages to class members as a result of the alleged fraud and the methodologies employed in my Expert Report are appropriate for that purpose.  It is unnecessary to form an opinion regarding the relative contribution of any particular Defendant to the fraud, inflation, or damages to answer the question I have been asked. . . . Moreover, it is my understanding that Dr. Epstein[5] supports the position that D&T was aware of and facilitated the concealment of the material misstatements in DVI's financial statements during the Class period; the result of which could lead to D&T being joint and severally liable, or at least held to a high percentage under a proportionate liability theory.

---

[5]  Barry Jay Epstein, Ph.D., CPA, prepared a report, dated Oct. 3, 2008, Pls. Resp. to Def. Initial Mot. to  Exclude Coffman, Ex. 17 (Doc. No. 706).  Here, Deloitte does not challenge Epstein's opinions.

Id., ¶¶ 59, 58-59.  In sum, Coffman assumes as fact that Deloitte is liable for private securities fraud, and opines to the effect that any reasonable jury would or should ultimately so find.

III.    DISCUSSION

Federal Rule of Evidence 702, which governs the admissibility of expert opinion testimony, has three major requirements:

> (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact.

Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).  These requirements have been summarized as "a trilogy of restrictions on expert testimony:  qualification, reliability and fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994) (citing Daubert, supra)).  Furthermore, the Rules of Evidence "embody a strong preference for admitting any evidence that may assist the trier of fact," and take a "liberal policy of admissibility" with respect to expert testimony.  Pineda, 520 F.3d at 243 (citing Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

There is no dispute that Coffman has the requisite "scientific, technical, or other specialized" expertise to testify as an expert on loss causation and damages in this case.  Fed. R. Evid. 702.  Instead, Deloitte challenges the reliability and fit of Coffman's opinions.  However, a careful review of the record discloses that Coffman's opinions are based on "good grounds" – that is, sufficient facts or data and reliable principles and methods.  Daubert, 509 U.S. at 590; see Fed. R. Evid. 702 (standard of evidentiary reliability).  For the reasons set forth in the Court's previous decision – In re DVI, Inc. Sec. Litig., No. 03-5336, 2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) – Coffman's testimony is admissible.  Neither side presents anything here that warrants a

departure from that ruling at this juncture.  And Deloitte's present objections to Coffman's

opinion testimony merit a short discussion.

Rule 702 and <u>Daubert</u> require a district court to ensure that there is a "sufficient 'fit'

between the expert's testimony and the facts that the jury is being asked to consider."  <u>United

States v. Schiff</u>, 602 F.3d 152, 172-73 (3d Cir. 2010) (citing <u>Daubert</u>, 509 U.S. at 591).  In order

to satisfy the "fit" requirement, the "'expert testimony proffered [must be] sufficiently tied to the

facts of the case that it will aid the jury in resolving a factual dispute.'"  <u>Id.</u> at 173 (quoting

<u>United States v. Downing</u>, 753 F.2d 1224, 1242 (3d Cir. 1985)).  "Put another way," our Court of

Appeals explains, "this is a question relevance."  <u>Id.</u>  And "expert evidence which does not relate

to an issue in the case is not helpful."  <u>In re TMI Litig.</u>, 193 F.3d 613, 670 (1999) (citing <u>Daubert</u>,

509 U.S. at 591).  The standard for this factor "is not that high," but "higher than bare relevance."

<u>Schiff</u>, 602 F.3d at 173 (quoting <u>In re Paoli</u>, 35 F.3d at 745).

Rule 702 and <u>Daubert</u> also require a district court to ensure that "expert testimony is not

only relevant, but reliable."  <u>ZF Meritor, LLC v. Eaton Corp.</u>, 696 F.3d 254, 291 (3d Cir. 2012),

<u>cert. denied</u>, 133 S. Ct. 2025 (U.S. 2013).  As our Court of Appeals has "made clear, the

reliability analysis required [by <u>Daubert</u>] applies to all aspects of an expert's testimony:  the

methodology, the facts underlying the expert's opinion, [and] the link between the facts and the

conclusion.'"  <u>Id.</u> (alterations in original) (quoting <u>Heller v. Shaw Indus., Inc.</u>, 167 F.3d 146, 155

(3d Cir. 1999)).  The standard for determining reliability "is not that high."  <u>In re Paoli</u>, 35 F.3d

at 745.  Proponents of expert testimony do not "have to prove their case twice – they do not have

to demonstrate to the judge by a preponderance of the evidence that the assessments of their

experts are *correct*, they only have to demonstrate by a preponderance of evidence that their

opinions are reliable."  Id. at 744 (emphasis in original) ("evidentiary requirement of reliability is lower than the merits standard of correctness"); accord Pure Earth, Inc. v. Call, 531 F. App'x 256, 259 (3d Cir. 2013).

Deloitte disclaims the fitness and reliability of Coffman's opinions, but does not present a cogent challenge to the event-study methods that he used to reach his conclusions.  Essentially, Deloitte says that Coffman's opinions are incomplete – that is, he did not do enough analysis to formulate sufficient opinions to satisfy a plaintiff's burden of proving all requirements of the element of loss causation.  In Deloitte's view, Coffman should have but did not disaggregate – that is, separately identify and account for – negative information and events that are not related to the fraud allegedly committed by Deloitte, but affect the price of DVI's securities.  In addition, Deloitte says that Coffman should have but did not allocate the alleged inflation (or deflation) in DVI's securities among the potentially liable defendants, and should have but did not apportion or attribute the inflation (or deflation) that allegedly results from Deloitte's acts or omissions.  Furthermore, in regard to proof of actual economic damages, Coffman should have but did not allocate losses in the value of DVI's securities among the potentially liable defendants, and should have but did not apportion or attribute the losses that allegedly result from Deloitte's acts or omissions.  However, there is no requirement that Coffman have done so.

This is so because a qualified expert may offer testimony concerning an ultimate issue in the case.  Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue.").  Accord Forrest v. Beloit Corp., 424 F.3d 344, 353 (3d Cir. 2005) (citing Salas v. Wang, 846 F.2d 897, 905 (3d Cir. 1988) (Rule 704 would permit an expert to testify as to the ultimate issue of aggregate damages)).  It is also well-established that an expert may offer an

opinion based on hypothetical facts reasonably consistent with the evidence.  Id., 424 F.3d at 353 (citing Wilburn v. Maritrans GP Inc., 139 F.3d 350, 356 (3d Cir. 1998) ("'a qualified expert may answer hypothetical questions'" (quoting Teen–Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 404 (3d Cir. 1980)).  In this case, whether the factual assumptions upon which Coffman's opinions are proffered are "fairly and fully stated" are "a question for discussion to the jury."  Moyer v. Aetna Life Ins. Co., 126 F.2d 141, 144 (3d Cir. 1942) (internal quotation marks and citation omitted).  Moreover, his opinions, just like the opinion of any other expert, "can be of no value, when the facts of which the opinion is predicated, are not established."  Id.  And "whether they are so established is for the subsequent consideration of the jury."  Id.

Here, Coffman assumes – at the direction of counsel that retained him – that Defendants are in fact liable for private securities fraud.  He opines that Deloitte should be found so liable by a jury.  He also assumes that the collective acts or omissions of all Defendants together – including those of "the defendant" here, Deloitte – jointly caused the loss for which Lead Plaintiffs seeks to recover damages.  Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4(b)(4).[6]  Lead Plaintiffs may or may not be able to prove these assumptions at trial.  But Coffman's assumptions alone do not establish that his opinions are inadmissible here.  His opinions are supported by record evidence, just not all of the evidence that Deloitte submits should be offered in order for it to held liable.  Moreover, there is no requirement that Lead Plaintiffs use Coffman's testimony alone to satisfy all aspects of their burden to prove loss causation and damages.  They may proffer other admissible evidence on these points.

---

[6]  "In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which plaintiff seeks to recover damages."  Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4(b)(4).

Furthermore, to the extent that Coffman's opinions are fit and reliable, they are within "the range where experts might reasonably differ," and the jury, not the trial court, must be the one to decide among conflicting views of different experts.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 153 (1999).

Coffman's opinions do not contradict or conflict with this Court's previous rulings.  See, e.g., In re DVI, Inc. Sec. Litig., No. 03-5336, 2010 WL 3522090, at *13 (expert opinion evidence is required to "'distinguish between fraud-related and non-fraud related influences of the stock's price behavior'" (quoting In re Imperial Credit Indus., Inc., Sec. Litig., 252 F. Supp. 2d 1005, 1014-15 (C.D. Cal. 2003)); WM High Yield Fund v. O'Hanlon, No. 04-3423, 2013 WL 3230667, at *8-9, 11-13,15-17 (E.D. Pa. June 27, 2013) (proof of loss causation and damages requires disaggregation of non-fraud related influences as well as allocation of responsibility among multiple, potentially liable defendants).  Instead, Coffman's reports focus narrowly on whether certain events corrected artificial inflation in DVI's securities, and he simply does not proffer opinions that disaggregate non-fraud related influences on the price of DVI's securities or that allocate  responsibility among multiple potentially liable defendants.

Moreover, Coffman's opinions in large part are consistent with requirements set by the Supreme Court and our Court of Appeals for proof of loss causation and damages.  See, e.g., Dura Pharm., Inc. v. Brad, 544 U.S. 336, 342-43 (2005); McCabe v. Ernst & Young, LLP, 494 F.3d 418, 425-26 (3d Cir. 2007) ("must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff") (citing Semerenko v. Cendant Corp., 223 F.3d 165, 184-85, 187 (3d Cir. 2000) and EP MedSystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 884 (3d Cir.

2000)); Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 301 (3d Cir. 1991) (generally, expert

testimony is required to establish "both the fact of damage and the appropriate method of

calculation").  Accord Pure Earth, 531 F. App'x at 260 ("The loss causation inquiry asks

'whether the misrepresentation or omission proximately caused the economic loss.'") (quoting

McCabe, 494 F.3d at 425-26)).[7]

Our Court of Appeals instructs that the "ultimate touchstone" for determining the

reliability of proffered expert opinion

> is helpfulness to the trier of fact, and . . . helpfulness turns on whether the expert's
> technique or principle is sufficiently reliable so that it will aid the jury in reaching
> accurate results.

In re Paoli, 35 F.3d at 744 (internal quotation marks, citations, and alteration omitted).  Here, the

record establishes that Coffman's opinion testimony might assist the jury in resolving factual

disputes as to whether certain events were a substantial factor in proximately causing declines in

the price of DVI's securities, thereby creating actual economic losses for Plaintiffs.

Inasmuch as expert witnesses may express their opinions on matters about which they

have no firsthand knowledge, Fed. R. Evid. 703, and an expert's testimony may be given

substantial weight by the jury due to the expert's status, a trial judge must be vigilant in

---

[7]  The Supreme Court recognized that a "tangle of factors" affects the price of securities and,
therefore, determinations of loss causation and damages: "Shares are normally purchased with an eye toward
a later sale.  But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the
misrepresentation will not have led to any loss.  If the purchaser sells later after the truth makes its way into
the marketplace, an initially inflated purchase price *might* mean a later loss.  But that is far from inevitably
so.  When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect,
not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new
industry-specific or firm-specific  facts, conditions, or other events, which taken separately or together
account for some or all of that lower price. . . . Other things being equal, the longer the time between
purchase and sale, the more likely that this is so, *i.e.*, the more likely that other factors caused the loss." Dura
Pharm., Inc. v. Brad, 544 U.S. 336, 342-43 (2005).

exercising a "gatekeeper" role.  <u>Daubert</u>, 509 U.S. at 595; <u>Kumho Tire Co.</u>, 526 U.S. at 148.

Mindful of that role, it is nonetheless well recognized that:

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

<u>Daubert</u>, 509 U.S. at 596.  Additionally, in the event a scintilla of evidence is adduced to support the position of an expert for either side, and it is concluded that the evidence is insufficient to allow a reasonable juror to find that the position more likely than not is true, a judgment could be directed.  <u>See</u> <u>id.</u> (citing Fed. R. Civ. P. 50(a)).  These procedural safeguards, rather than exclusion of an expert's testimony that satisfies the evidentiary requirements for admission under Rule 702, are appropriate here.

For the above reasons, Deloitte's motion to preclude the trial testimony of Lead Plaintiffs' expert, Coffman, will be denied.  In addition, trial will not be further delayed to accommodate the production of supplemental expert reports.  <u>See</u> Pls. Mem. of Law at 4, 24, 32, 33 (Doc. No. 873) (requests to supplement).  <u>Cf</u> Def. Mem. of Law at 3-4, 11-12, 19-20 (Doc. No. 870); Def. Reply Br. at 12-13 (Doc. No. 885).

An Order accompanies this Memorandum.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.